UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20740-CV-MOORE
CASE NO. 14-20642-CR-MOORE
MAGISTRATE JUDGE REID

TIMOTHY MIERS,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE
## RE MOTION TO VACATE - 28 U.S.C. § 2255

### I. Introduction

Movant, **Timothy Miers,** filed a *pro se* amended motion to vacate, pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his convictions and sentences for one count of kidnapping and two counts of interstate domestic violence entered following a jury verdict in **Case No. 14-20642-CR-Moore.** For the reasons discussed below, Movant is not entitled to habeas corpus relief.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Fla. Admin. Order 2019-02, and Rules 8 and 10 Governing Section 2255 cases in the United States District Courts.

The Court has considered Movant's amended motion to vacate with supporting exhibits [CV ECF No. 11],[1] and supplements [CV ECF Nos. 25, 43]; the government's responses [CV ECF

---

[1] Citations to [CV ECF No. 19-20740-CV-MOORE] refer to docket entries in this federal § 2255 proceeding, while citations to [CR ECF No. 14-20642-CR-MOORE] refer to the docket entries in the underlying criminal case under attack here.

Nos. 42, 49] to this court's order to show cause, and Movant's reply [CV ECF No. 65]. The Court

has also considered with relevant pleadings filed in the underlying criminal case, of which the

court takes judicial notice. *See* Fed. R. Evid. 201; *Nguyen v. United States,* 556 F.3d 1244, 1259

n. 7 (11th Cir. 2009) (citing *United States v. Glover,* 179 F.3d 1300, 1302 n. 5 (11th Cir. 1999)).

## II. Claims

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant to *Haines v.*

*Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam), Movant raises three grounds. The first two

challenge counsel's effectiveness at trial and on appeal, and the third challenges the court's

jurisdiction. [CV ECF No. 11 at 3-18; CV ECF No. 25 at 2-21]. For purposes of clarity, Movant's

grounds for relief are numbered, to the extent practicable, consistent with his filings, as follows:

1. His **trial** attorneys, Anthony J. Natale and/or Katherine Carmon, were ineffective for failing to:

    (i)     object to Movant's conviction as to Count 1 on double jeopardy grounds [CV ECF No. 11 at 3-5; CV ECF No. 25 at 2-15];

    (ii)    object to the jury instruction on interstate domestic violence because it broadened the Movant's statutory maximum sentence exposure thereby resulting in a constructive amendment to Counts 2 and 3 of the Superseding Indictment [CV ECF No. 11 at 6-7; CV ECF No. 25 at 15-17];

    (iii)   cross-examine Special Agent Magnuson, the government's "cell site expert," regarding his scientific findings relating to Movant's location during the time when the kidnapping was alleged to have occurred [CV ECF No. 11 at 8-11];

    (iv)    effectively investigate, retrieve, develop, and/or present exculpatory DNA test results obtained from the pants of the kidnapped victim, J.C.M. [CV ECF No. 11 at 12-14]; and,

    (v)     expose J.C.M.'s false testimony, and their cumulative errors, as set forth in claims 1(iii) and 1(iv) violated Movant's due process rights [CV ECF No. 11 at 14-15].

2.   His **appellate** counsel failed to assign as error on appeal that Movant's double jeopardy rights were violated when he was convicted and sentenced as to Count 1 to the lesser-included-offense of interstate domestic violence. [CV ECF No. 11 at 16; CV ECF No. 25 at 18]; and,

3.   The court lacked jurisdiction to impose a sentence as to Count 1. [CV ECF No. 11 at 18; CV ECF No. 25 at 25].

In a supplemental amendment, the gist of Movant's new claim is as follows:

4.   The government engaged in prosecutorial misconduct in 2014 through 2015 by failing to disclose and/or otherwise falsifying "the true facts" that a DNA report in their custody clearly excluded Movant as the perpetrator. [CV ECF No. 43 at 2-6].

### III. Procedural Background

### A. Indictment to Verdict

Movant was charged by Superseding Indictment with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and two counts of interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(1)-(2), (b)(3) (Counts 2, 3). [CR ECF No. 18]. Movant was convicted on all Counts following a jury verdict. [CR ECF No. 72].

### B. Pre-Sentence Investigation to Judgment

Prior to sentencing, a Presentence Investigation Report ("PSI") was prepared, grouping Counts 1 through 3, pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") § 3D1.1(a)(1) and § 3D1.2(c) (U.S. Comm'n 2014). [PSI ¶ 27]. The base offense level was set at a level 32 pursuant to U.S.S.G. § 2A4.1. [PSI ¶ 28]. An additional nine levels were added to the base offense, based on specific offense characteristics, because the victim: (1) sustained serious bodily injury under U.S.S.G. § 2A4.1(b)(2)(B); (2) was not released before seven days had elapsed under U.S.S.G. § 2A4.1(b)(4)(B); and (3) was sexually exploited under U.S.S.G. § 2A4.1(b)(5). [PSI ¶¶ 29, 30, 31]. Although it was noted that Movant qualified for an enhanced sentence as a career offender under U.S.S.G. § 4B1.1(a), because his offense level under U.S.S.G. § 2A4.1 was greater than the career

offender level, the career offender enhancement was not applied. [PSI ¶ 36]. It was also determined that no adjustment for acceptance of responsibility was warranted under U.S.S.G. § 3E1.1, because Movant proceeded to trial and put the government to its burden of proof by denying the essential factual elements of guilt. [PSI ¶ 37]. When adding the specific offense enhancements to the adjusted base offense level, Movant's total adjusted offense level was set at a level forty-one. [PSI ¶ 38].

Next, the probation officer determined Movant had a total of twenty-nine criminal history points, resulting in a criminal history category VI. (PSI ¶ 64). Based on a total offense of level forty-one and a criminal history category VI, the advisory guideline range was set at a minimum of 360 months to a maximum lifetime term of imprisonment. (PSI ¶ 93). The Movant faced a statutory maximum of life imprisonment for Count 1 and a statutory maximum of ten years each on Counts 2 and 3. [PSI ¶ 92]. No objections to the PSI were filed.

On **March 16, 2015,** Movant appeared for sentencing. [CR ECF Nos. 105, 120]. At the beginning, the court heard argument from the parties regarding defense counsel's motion to withdraw and Movant's *pro se* filings while represented by counsel. [CR ECF No. 120 at 2-19]. After denying the motion to withdraw and striking Movant's *pro se* filings, the court next heard argument from the parties regarding an appropriate sentence. [*Id.* at 17-23].

The court then reviewed Movant's criminal history in detail beginning at the age of eighteen until the age of forty. [*Id.* at 24-32]. The court commented that, because Movant "throughout his entire adult life has had no respect for the law," the court had to consider a sentence that would "promote respect for the law." [*Id.* at T. 32-33].

After noting that it had considered the statements and recommendations of the parties, the PSI containing the advisory guidelines, and the 18 U.S.C. § 3553(a) factors, the court determined

4

that a high-end guideline sentence was warranted based on the circumstances of the case, and Movant's "cruel, brutal, and degrading conduct towards the victim." [*Id.* at 33]. The court imposed a sentence of life imprisonment as to Count 1, and two concurrent terms of 120 months of imprisonment as to Counts 2 and 3, to be followed by five years of supervised release. [CR ECF No. 118; CR ECF No. 120 at 34-35].

### C. Direct Appeal Proceedings

On appeal, Movant argued that: (1) the court erred in allowing introduction of evidence regarding an incident involving another woman; (2) the court erred in denying Movant's proposed instruction as to the domestic violence offenses; (3) there was insufficient evidence to satisfy the interstate commerce element as to the charged offenses; and (4) the court abused its discretion when it denied defense counsel's motion to withdraw. *See United States v. Miers,* 686 F. App'x 838, 840 (11th Cir. 2017) (per curiam), [CR ECF No. 122]. On April 28, 2017, the Eleventh Circuit Court of Appeals *per curiam* affirmed the judgment of conviction in a written, but unpublished decision. *Miers,* 686 F. App'x at 845. [*Id.*]. Certiorari review was denied on **February 20, 2018.** *Miers v. United States,* 138 S. Ct. 977 (2018). [CR ECF No. 128].

For purposes of the federal one-year limitations period, Movant's conviction became final on **February 20, 2018,** when the Supreme Court denied certiorari review. *See Gonzalez v. Thaler,* 565 U.S. 134, 149-50 (2012); *Phillips v. Warden,* 908 F.3d 667, 672 (11th Cir. 2018). At the latest, Movant was required to file this motion to vacate within one year from the date his conviction became final, or no later than **February 20, 2019.** *See* 28 U.S.C. § 2255(f)(1); *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1986); *Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir. 2008).

### D. § 2255 Motions

Pursuant to the mailbox rule, Movant timely filed his initial § 2255 motion to vacate on **February 19, 2019,** after he signed and then handed the motion to prison officials for mailing. [CV ECF No. 1 at 12]. *See Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). His operative, amended § 2255 motion was filed on **March 28, 2019,** after expiration of the one-year limitations period. [CV ECF No. 11 at 22]. The claims raised in the amended motion are timely because they relate back to the timely filed initial motion. *See Davenport v. United States,* 217 F.3d 1341, 1346 (11th Cir. 2000).[2] Next, Movant filed another untimely amendment, raising claim 4, as listed above. [CV ECF No. 43]. To the extent the motion raises a new claim or argument not raised in his timely § 2255 motion, it is time-barred, pursuant to *Davenport.* In any event, the claim will be discussed briefly below.

### IV. Standard of Review

#### A. Section 2255

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United* ¶*States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of

---

[2] In *Davenport v. United States,* 217 F.3d 1341, 1346 (11th Cir. 2000), the Eleventh Circuit held that where a movant adds new claims in an amended § 2255 motion to vacate which do not relate back to claims raised in an initial timely filed motion, the new claims are time-barred. *See also Mayle v. Felix,* 545 U.S. 644 (2005).

justice. *United States v. Frady,* 456 U.S. 152, 165 (1982); *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citations omitted). If a court finds a claim under § 2255 valid, the court shall vacate and set aside the judgment, and discharge the prisoner, grant a new trial, or correct the sentence. *See* 28 U.S.C. § 2255. The burden of proof is on Movant, not the government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

To overcome a procedural default arising from a claim that could have been, but was not raised on direct appeal, Movant must demonstrate: (1) cause for failing to raise the claim and resulting prejudice; or, (2) that a miscarriage of justice excuses the procedural default because Movant is actually innocent. *See McKay,* 657 F.3d at 1996. The actual innocence exception is exceedingly narrow in scope as it concerns a petitioner's "actual" innocence, rather than his "legal" innocence. *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001).

### B. Ineffective Assistance of Counsel Principles

Where, as here, a defendant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if Movant cannot meet one of *Strickland*'s prongs, the court need not address the other prong. *Strickland,* 466 U.S. at 697; *Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013). The *Strickland* standard applicable to ineffective assistance of trial counsel claims also governs of ineffective assistance of appellate counsel. *See Corales-Carranza v. Sec'y, Fla. Dep't of Corr.,* 768 F. App'x 953, 957 (11th Cir. 2019) (quoting *Brooks v. Comm'r, Ala. Dep't of Corr.,* 719 F.3d 1292, 1300 (11th Cir. 2013) (per curiam) (internal quotation marks omitted)).

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). With regard to the prejudice requirement, Movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Counsel, however, has no duty to raise non-meritorious claims. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 754 (11th Cir. 2010). Bare and conclusory allegations of ineffective assistance are also insufficient to satisfy the *Strickland* test. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333-34 (11th Cir. 2012).

## V. Facts Adduced at Trial

Because Movant raises claims relating to the testimony of government witnesses and evidence introduced at trial, the facts, as succinctly narrated by the Eleventh Circuit on direct appeal follows:

> During trial, Mr. Miers' girlfriend, J.C.M., testified that Mr. Miers was a long-distance truck driver who transported goods across the eastern United States. Mr. Miers invited J.C.M. to join him on several long-distance trips, and the two took six trips in total together. At the beginning of their sixth trip, on August 15, 2014, Mr. Miers learned that J.C.M. had been intimate with another man. Mr. Miers then became aggressive and hit her on her face, but they reconciled after he apologized.
>
> Between August 17 and 19, Mr. Miers and J.C.M. traveled from New York to Boston, and then south toward Florida. J.C.M. testified that on August 17, Mr. Miers "changed totally," and threatened her and her family when she asked if should [sic] could be dropped off. Mr. Miers also told J.C.M. what he had done to his previous girlfriends, including that he had killed an ex-girlfriend and would do the same to J.C.M.; that he had thrown another ex-girlfriend, R.D., out of a moving

truck; that he had hit yet another ex-girlfriend; and that he had beaten his ex-wife so hard that she became disabled.[3]

J.C.M. testified that for several days, Mr. Miers raped, bound, and physically and verbally abused her. On August 19, Mr. Miers stopped at a truck stop in Virginia, where he and J.C.M. entered private showers. There he locked her up against her will and strangled, beat, and spit on her. After leaving the truck stop, they continued to drive and Mr. Miers beat J.C.M. until she admitted her infidelity. Mr. Miers then strangled J.C.M., bound her with duct tape, gagged her, and told her he was going to kill her. The abuse continued, and Mr. Miers filmed while he raped and demeaned her. J.C.M. was finally able to escape when they arrived in Medley, Florida, on August 21, 2014.

*See Miers,* 635 F. App'x at 840-41, [CR ECF No. 122].

## VI. Discussion

### A. Ineffective Trial Counsel Claims

1. <u>Failure to Object to Count 1</u>

For the reasons discussed below, Movant is not entitled to relief on this clam.

In **claim 1(i),** Movant asserts that trial counsel failed to object to Movant's conviction and sentence on Count 1 on double jeopardy grounds. [CV ECF No. 11 at 3-5; CV ECF No. 25 at 2-15]. In related **claim 2,** Movant faults appellate counsel for failing to assign as error on appeal that Movant's double jeopardy rights were violated when he was convicted and sentenced on Count 1, the kidnapping offense. [CV ECF No. 11 at 16; CV ECF No. 25 at 18].

Movant maintains that to be convicted for two counts of interstate domestic violence, the government was required to prove a "predicate crime of violence." [CV ECF No. 11 at 3]. He argues that the only crime of violence the government asserted was "kidnapping." [*Id.*]. He claims the elements of the kidnapping offense, as charged in Count 1, are a "subset" of the interstate

---

[3] The Eleventh Circuit noted that evidence of these prior bad acts were introduced at trial through testimony from the victims, and three witnesses to the incident involving R.D., but evidence regarding the disappearance of an ex-girlfriend, for which Movant was not charged, was not allowed into evidence because its probative value was outweighed by the potential for prejudice. *See United States v. Miers,* 686 F. App'x at 840 n.1.

domestic violence offenses, as charged in Counts 2 and 3. [*Id.* at 4]. Therefore, he claims the government and jury were required to prove every element of a kidnapping offense in order to establish the "crime of violence" element of the interstate domestic violence charges. [*Id.*]. He suggests that "kidnapping" is a "lesser included offense" of the "interstate domestic violence charges" as there is no other "crime of violence" which the government or jury could use to support the charges in Counts 2 and 3. [*Id.*]. Therefore, he claims his "double jeopardy rights" were violated because the "kidnapping offense is the same offense as both interstate domestic violence offenses." [*Id.*]. Movant argues that had counsel objected on these bases, the court would have been required to dismiss the kidnapping offense. [*Id.* at 5].

Because counsel lodged no objections, Movant claims he received "multiple punishments for the same offense," presumably resulting in a violation of the Double Jeopardy Clause, because there was "no clear legislative intent" authorizing "cumulative punishment on offenders of the interstate domestic violence statute." [*Id.*]. Movant further argues that had counsel objected to the imposition of cumulative punishments for the same offense at sentencing, the objection would have been sustained, and he would have only faced a statutory maximum of ten years of imprisonment on each of the interstate domestic violence convictions. [*Id.*].

### a. Applicable Law Re Double Jeopardy and Multiplicity/Duplicity

The Double Jeopardy Clause protects against multiple punishments for the same offense. *See Brown v. Ohio,* 432 U.S. 161, 165 (1977) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969) *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989)).

Under *Blockburger*,[4]"where the same act constitutes a violation of two distinct statutory provisions, the test to determine whether there are two offenses is whether each provision requires

---

[4] *Blockburger v. United States,* 284 U.S. 299, 304 (1932).

proof of an additional fact which the other does not." *See Lee,* 785 F. App'x 667, 668 (11th Cir. 2019) (citing *Brown,* 432 U.S. at 166). Thus, "unless each statute requires proof of an additional fact which the other does not, the offenses are the same, and the Double Jeopardy Clause prohibits multiple punishments for that single offense." *Lee,* 785 F. App'x at 668-69 (citing *Brown,* 432 U.S. at 165).

To determine whether the Double Jeopardy Clause was violated, the court's analysis should focus on the "'proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial.'" *Lee,* 785 F. App'x at 669 (quoting *United States v. Bobb,* 577 F.3d 1366, 1372 (11th Cir. 2009)).

### b. Analysis

The Superseding Indictment charged Movant in Count 1, with violating 18 U.S.C. § 1201(a)(1), as follows:

> Beginning on or about August 11, 2014, and continuing through on or about August 21, 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

> **TIMOTHY MIERS,**
> **a/k/a/ "Vinny,"**

> did willfully and unlawfully seize, confine, inveigle, kidnap, abduct, and carry away, any person that is, J.C.M., and did hold that person for reward and otherwise, that is, for the purpose of abuse, intimidation, and sexual gratification, and did travel in interstate commerce and did willfully transport J.C.M. in interstate commerce, and did use any means, facility, and instrumentality of interstate commerce while committing and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Section 1201(a)(1).

[CR ECF No. 18 at 1].

The Superseding Indictment also charged Movant in Counts 2 and 3, with events occurring on or about August 11, 2014, and continuing through on or about August 21, 2014, in violation of different subsections of the interstate domestic violence statute, 18 U.S.C. § 2261. [CR ECF No.

18 at 2-3]. Specifically, Count 2 charged Movant with travelling "in interstate commerce with the intent to kill, injure, harass, and intimidate J.C.M., an intimate partner and dating partner, and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M.," in violation of **18 U.S.C. § 2261(a)(1)** and (b)(3). [ECF No. 18 at 1-2] (emphasis added). Count 3 charged Movant with causing "J.C.M., his intimate partner and dating partner, to travel in interstate commerce by force, coercion, duress, and fraud, and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M.," in violation of **18 U.S.C. § 2261(a)(2) and** (b)(3). [CR ECF No. 18 at 3] (emphasis added).

The federal kidnapping statute, 18 U.S.C. § 1201(a)(1), requires the government to prove beyond a reasonable doubt the following elements: (1) "a transportation in interstate commerce"; (2) "of an unconsenting person"; (3) "being held for ransom or reward or otherwise", and (4) that "such acts must be knowingly and willfully done." *See Miers,* 686 F. App'x at 838 (quoting *United States v. Lewis,* 115 F.3d 1531, 1535 (11th Cir. 1997)). The Eleventh Circuit has further explained that "'the act of holding a kidnapped person for a proscribed reason necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim.'" *See United States v. Calles,* 271 F. App'x 931, 940 (11th Cir. 2008) (per curiam) (quoting *Chatwin v. United States,* 326 U.S. 455, 460 (1946)). To establish that the victim was held for ransom, reward, or otherwise, the government "need only establish that the defendant acted for *any* reason which would in *any* way be of benefit." *Miers,* 686 F. App'x at 843 (quoting *Lewis,* 115 F.3d at 1536 (emphasis in original)). Further, "the motivation of rape is admissible to show defendant kidnapped for a benefit. . ." *United States v. Williams,* 731 F. App'x 894, 899 (11th Cir. 2018) (quoting *United States v. Duncan,* 855 F.2d 1528, 1536 (11th Cir. 1988)).

On the other hand, the interstate domestic violence statute, 18 U.S.C. §§ 2261(a)(1) and (2), requires that the defendant "travel in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate," *see* § 2261(a)(1), or that the defendant "causes . . . a dating partner to travel in interstate . . . commerce . . . by force, coercion, duress, or fraud, and . . . in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that . . . dating partner," *see* § 2261(a)(2).

The interstate domestic violence offense requires proof of an element not required under the kidnapping offense. Kidnapping does not require that the defendant be a "spouse, intimate partner, or dating partner" of the victim. Further, the kidnapping offense requires proof that the victim was abducted, kidnapped, or carried away, and held for "ransom, reward, or otherwise," while the interstate domestic violence offense requires no such proof. Here, Movant committed separate acts upon the same victim which do not run afoul of the Double Jeopardy Clause. Thus, Movant cannot demonstrate his attorneys were ineffective for failing to raise this issue either prior to, post-conviction, or on appeal. *See Iannelli v. United States,* 420 U.S. 770, 785 n.17 (1975).

2. Failure to Object to Jury Instruction

In **claim 1(ii)**, Movant asserts that trial counsel failed to object to the jury instruction on interstate domestic violence because it broadened the Movant's statutory maximum sentence exposure thereby resulting in a constructive amendment to Counts 2 and 3 of the Superseding Indictment. [CV ECF No. 11 at 6-7; CV ECF No. 25 at 15-17]. Movant argues that the jury was instructed to consider two additional and alternative definitions of "serious bodily injury" which were not charged in the Superseding Indictment. [CV-ECF No. 11 at 6]. Movant suggests that the proof at trial established that he sexually assaulted the victim, but argues he was not charged with sexual assault, and it is not an element of the interstate domestic violence offenses. [*Id.*]. He argues

that these two additional and alternative definitions of serious bodily injury were not applicable to the charged offenses, and unlawfully constructively amended the § 2261 offenses. [*Id.* at 6-7]. When considering the correct definition of "serious bodily injury," Movant concludes that no reasonable jury could find him guilty of the interstate domestic violence offenses. [Id.].

Respondent argues Movant is not entitled to relief on this claim. [CV ECF No. 11 at 6-8]. Movant disagrees. [CV ECF No. 65 at 5-8].

### a. Applicable Law

#### (i) Constructive Amendment

"The Fifth Amendment to the Constitution provides that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'" *United States v. Feldman,* 931 F.3d 1245, 1259 (11th Cir. 2019) (quoting U.S. Const. amend. V). A "fundamental principle" of the Fifth Amendment is that a defendant "'can only be convicted for a crime charged in the indictment' because '[i]t would be fundamentally unfair to convict a defendant on charges of which he had no notice.'" *See United States v. Johnson,* 2020 WL 2299603 at *1 (11th Cir. 2020) (per curiam) (quoting *United States v. Keller,* 916 F.2d 628, 632-33 (11th Cir. 1990)); *Feldman,* 931 F.3d at 1259-60 (quoting *Stirone v. United States,* 361 U.S. 212, 217 (1960)).

A "constructive amendment" to an indictment occurs when, for example, "a faulty jury instruction . . . broadens the possible bases for conviction beyond" the essential elements of the offense contained in the indictment. *See Feldman,* 931 F.3d at 1260 (quoting *United States v. Madden,* 733 F.3d 1314, 1318 (11th Cir. 2013) (quoting *Keller,* 916 F.2d at 634). Thus, "so long as the indictment contained the essential elements of the crime charged, the particular offense conduct of which the defendant was convicted is identifiable, and the defendant was not prejudiced

by the deviation from the indictment, no constructive amendment occurred, and therefore there is no *per se* reversible error." *Williams,* 785 F. App'x 692, 700 (11th Cir. 2019) (per curiam) (citing cf. *United States v. Narog,* 372 F.3d 1243, 1247-48 (11th Cir. 2004)).

(ii) <u>Material Variance</u>

"In contrast, 'a variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same.'" *Williams,* 785 F. App'x at 700 (quoting *Keller,* 916 F.2d at 634). The Eleventh Circuit has made clear that a variance occurs, requiring reversal on appeal where the charged offense and the evidence presented at trial is "material, and the material variance prejudiced the defendant." *See Johnson,* 2020 WL 2299603 at *1 (citing *United States v. Richardson,* 532 F.3d 1279, 1284 (11th Cir. 2008)). "Prejudice" is "measured in terms of whether the defendants were deprived of fair notice of the crimes for which they were being tried, and whether the spillover of the proof of other crimes prejudiced them." *See Johnson,* 2020 WL 2299603 at *1 (citing *United States v. Glinton,* 154 F.3d 1245, 1252 (11th Cir. 1998)).

The test to ascertain whether a material variance between the indictment and the evidence introduced at trial occurred requires "viewing the evidence in the light most favorable to the government," and then determining whether "a reasonable trier of fact could have found" that a single offense existed beyond a reasonable doubt. *See Johnson,* 2020 WL 2299603 at *2 (citing *Richardson,* 532 F.3d at 1284).

***b. Analysis***

As will be recalled, Movant was charged by Superseding Indictment with two counts of interstate domestic violence (Counts 2 and 3), arising from events occurring on or about August 11, 2014, and continuing through on or about August 21, 2014, in violation of 18 U.S.C. § 2261.

15

[CR ECF No. 18 at 2-3]. Specifically, Count 2 charged Movant with travelling "in interstate commerce with the **intent to kill, injure, harass, and intimidate** J.C.M., an intimate partner and dating partner, and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M.," in violation of **18 U.S.C. § 2261(a)(1) and (b)(3).** [ECF No. 18 at 1-2] (emphasis added). Count 3 charged Movant with causing "J.C.M., his intimate partner and dating partner, to travel in interstate commerce **by force, coercion, duress, and fraud,** and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M.," in violation of **18 U.S.C. § 2261(a)(2) and (b)(3).** [CR ECF No. 18 at 3] (emphasis added). Under § 2261(b)(3), Movant faced a term of not more than ten years of imprisonment "if serious bodily injury to the victim results. . ." *See* 18 U.S.C. §2261(b)(3) (2013).

In order to prove Movant committed interstate domestic violence, in violation of 18 U.S.C. § 2261, the government was required to prove beyond a reasonable doubt that Movant (1) "travel[ed] in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate," *see* § 2261(a)(1), or (2) "that the defendant "causes . . . a dating partner to travel in interstate . . . commerce . . . by force, coercion, duress, or fraud, and . . . in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that . . . dating partner," *see* § 2261(a)(2).

For violations of § 2261, the term "serious bodily injury" is defined under 18 U.S.C. § 2266(6). *See* 18 U.S.C. § 2266(6) (2013). Under § 2266(6), the term "serious bodily injury" has the meaning stated in 18 U.S.C. § 2119(2). *See* 18 U.S.C. § 2266(6) (2013). In turn, under § 2119(2), for a defendant convicted under federal carjacking statute, the term "serious bodily injury" includes the definition "set forth in § 1365 of this title, including any conduct that, if the

conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title." *See* 18 U.S.C. §2119(2) (2013). Section 1365(h)(3) defines "serious bodily injury" as "bodily injury which involves--(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *See* 18 U.S.C. § 1365(h)(3). Section 2241(a) makes it a crime to knowingly cause another person to engage in a sexual act, within the special maritime and territorial jurisdiction of the United States, "(1) by using force against that other person; or (2) by threatening or placing that person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a).

Regarding Count 2, the jury was instructed as follows: "It is a federal crime for anyone to travel in interstate commerce with the intent to kill, injure, harass or intimidate an intimate partner or dating partner and, who, in the course of or as a result of such travel, commits or attempts to commit a crime of violence against that intimate partner or dating partner." [CR ECF No. 114 at T. 201]. The court further instructed that Movant can be found guilty as to Count 2 only if the following facts are proven beyond a reasonable doubt: (1) "the Defendant and the victim, J.C.M., were intimate partners or dating partners;" (2) "the Defendant traveled in interstate commerce as charged in the indictment;" (3) "the Defendant traveled in interstate commerce with the **intent to kill, injure, harass or intimidate** J.C.M.;" and, (4) "in the course or as a result of that travel, the Defendant committed a crime of violence against J.C.M." [*Id.*] (emphasis added).

Regarding Count 3, the jury was instructed as follows: "It is a federal crime for anyone to cause an intimate partner or dating partner to travel in interstate commerce by **force, coercion, duress or fraud** and who, in the course of or as a result of to facilitate such conduct or travel, commits or attempts to commit a crime of violence against the intimate partner or dating partner."

[*Id.* at T. 203] (emphasis added). The court also instructed the jury that Movant could only be found guilty as to this offense if the government proved beyond a reasonable doubt that (1) the defendant and the victim, J.C.M. were intimate partners or dating partners; (2) the defendant caused J.C.M. to travel in interstate commerce by **force, coercion, duress or fraud;** (3) in the course of or as a result of that conduct, defendant intentionally committed a crime of violence against J.C.M.; and (4) as a result of this crime of violence, J.C.M. was bodily injured. [*Id.* at T. 203-04] (emphasis added).

As to both counts, the court further instructed that a "crime of violence" was defined as "the use, attempted use, or threatened use of physical force or harm against a person or conduct which, by its nature, presents a serious potential risk of physical injury to another." [*Id.* at T. 202-203, 205]. The court instructed the jury that "serious bodily injury," under § 2261(b)(3), means, in relevant part, "bodily injury which involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ or mental faculty or a sexual act committed by either use of force against the person, that is, J.C.M., or by threatening or placing J.C.M. in fear that any person will be subjected to death, serious bodily injury or kidnapping." [CR ECF No. 114 at 203, 205-06].

Movant claims that the court's addition of language defining "serious bodily injury" to include "a sexual act committed by either use of force" or by "threatening or placing J.C.M. in fear that any person will be subjected to death, serious bodily injury or kidnapping," constructively amended the Superseding Indictment by broadening the elements of the interstate domestic violence offenses. Movant is mistaken.

The Superseding Indictment provided notice to Movant of the charges. The evidence at trial and the instructions to the jury tracked the Superseding Indictment. The jury instructions

tracked the definitions of "serious bodily injury" under § 2266(6) which included conduct as defined under § 1365 and § 2241. *See e.g., United States v. Dunn,* 440 F. App'x 887, 890 (11th Cir. 2011) (for purposes of carjacking statute "serious bodily injury" includes definition under § 2119(2) and § 2241(a)(1)).

As applied, the evidence adduced at trial did not materially change the Superseding Indictment. There was no constructive amendment to the Superseding Indictment as it tracked the language of the statute. Further, the court did not err in its instruction regarding the definition of "serious bodily injury." When viewing the evidence adduced at trial, in the light most favorable to the government, there was overwhelming evidence that during a trip from New York to Boston, and then South Florida in August 2014, Movant learned J.C.M. had been intimate with another man, he became aggressive, hitting her on her face. *Miers,* 686 F. App'x at 840-41. For "several days," J.C.M. was "raped, bound, and physically and verbally abused" by Movant. *Miers,* 686 F. App'x at 841. At one point, Movant strangled J.C.M., threatening to kill her. *Miers,* 686 F. App'x at 841. Movant also forced J.C.M. to address him as "Master," and raped her while calling her names such as "pig, prostitute, cunt, and slave." [CR ECF No. 112 at T. 21-23].

On August 19, 2014, while at a truck stop outside of Florida, J.C.M. accompanied Movant to the truck stop showers after Movant threatened to choke and "break her neck." [*Id.* at T. 27-28]. He then secured her the shower door so she could not escape, at which time he began to "hit," "slap," and "spit" on J.C.M. [*Id.* at T. 33-34]. J.C.M. explained she did not ask for help at various times when they were not alone at the truck stop, because Movant had threatened to kill her and/or harm her family. [*Id.*].

At one point in their travels, after leaving a truck stop, Movant pulled the truck to the side of the road and began beating and torturing J.C.M. until she admitted her infidelity, at which point

Movant told J.C.M. he had no choice, but to kill her. [*Id.* at T. 42-44]. Later he duct-taped J.C.M.'s arms and gagged her, burning her with a cigarette, forcing her to use a Tupperware as a toilet. [*Id.* at 49, 53]. Movant took pictures of his abuse on his cellular phone, ordering J.C.M. to smile in order to remind her what would happen if she disobeyed him. [*Id.* at T. 49-58].

On August 21, 2014, once in the south Florida area, Movant used his cellular phone to record himself raping and demeaning J.C.M. [*Id.* at T. 59]. Upon arrival at a truck parts shop in Medley, Florida, Movant entered the store, at which time J.C.M. threw her bags out the truck's window, jumped out of the truck, and approached a stranger, Victor Oliveros ("Oliveros"), asking for help. [*Id.* at T. 88-89]. Oliveros testified J.C.M. was shaking and appeared nervous, and when she removed her sunglasses, her face appeared "beaten up." [CR ECF No. 111 at T. 76-77, 79]. After calming her down, Oliveros took her to the employee side entrance, where he contacted his boss who then called 9-1-1, after which the police arrived and assisted J.C.M. in arresting Movant, who was parked nearby. [*Id.* at T. 90-91, 93, 120].

After considering the evidence, the arguments, and the jury instructions, it cannot be said that the evidence complained of expanded the Superseding Indictment, much less that it constituted an impermissible material variance. Consequently, Movant cannot demonstrate deficiency or prejudice under *Strickland* arising from counsel's failure to pursue this non-meritorious claim. Relief is not warranted on this claim.

### 3. Failure to Cross-Examine Government Witness

As discussed below, Movant is not entitled to relief on this claim, because he cannot demonstrate *Strickland* prejudice.

In **claim 1(iii),** Movant asserts trial counsel failed to properly cross-examine Special Agent Magnuson ("Agent Magnuson"), the government's "cell site expert," regarding his scientific

findings relating to Movant's location during the timeframe of the kidnapping. [CV ECF No. 11 at 8-11]. Movant claims that Agent Magnuson's testimony regarding Movant's location during the kidnapping directly contradicted J.C.M.'s testimony. [*Id.* at 8]. He argues that the evidence shows that on August 19, 2014, between the time he left the truck stop at around 3:04 p.m. and a 4:11 p.m. phone call, he "could not and did not 'stop the truck'" after he left the truck stop. [*Id.* at 10]. Movant claims that Agent Magnuson's testimony placing Movant's truck approximately twenty miles south of the truck stop at 3:27 p.m. and 3:29 p.m., and approximately sixty miles south of the truck stop at 4:11 pm., conclusively demonstrating that the victim's testimony is "completely false." [*Id.*].

Movant claims that effective cross-examination of Agent Magnuson regarding his cell site location analysis and the maps he produced at trial would have discredited J.C.M.'s testimony. [*Id.* at 11]. Miers allegations misinterpret the record because his convictions were not based solely on that one, isolated incident, but rather spanned numerous days in August 2014.

Respondent argues correctly that Movant is not entitled to relief on this claim because he cannot demonstrate prejudice under *Strickland.* [CV ECF No. 42 at 20-21-25]. Movant disagrees. [CV ECF No. 65 at 8-11].

"The Confrontation Clause of the Sixth Amendment guarantees the reliability of 'evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" *See Dorsey v. Chapman,* 262 F.3d 1181, 1188 (11th Cir. 2001) (quoting *Maryland v. Cruz,* 497 U.S. 836, 845 (1990)). "Cross-examination of a witness testifying against the accused allows the jury to observe the witness's demeanor so that they might assess her [his] credibility and evaluate the truth of her [his] testimony." *Dorsey,* 262 F.3d at 1188 (citing *California v. Green,* 399 U.S. 149, 158 (1970)). There is no Confrontation Clause violation where

"'the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination. . .'" *See Dorsey,* 262 F.3d at 1188 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 22 (1985)). The Confrontation Clause "only 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Dorsey,* 262 F.3d at 1188 (quoting *Delaware,* 474 U.S. at 20).

As applied, Agent Magnuson testified at trial regarding Movant's cellular location data ("cell-site data") and created maps to illustrate Movant's travels during the relevant time periods. [CR ECF No. 113 at T. 60-118]. On August 15, 2014, at around 4:05 p.m., Movant pinged off towers located in the approximate area of Hialeah Gardens, Florida. [*Id.* at T. 78-79]. Based on the cell-site data, Movant traveled in a northerly direction for two days, from August 16 to August 17, 2014. [*Id.* at T. 81-82].

Agent Magnuson explained that Movant and J.C.M. traveled south from Pennsylvania to North Carolina on August 19, 2014, between 2:28 a.m. and 9:15 p.m. On August 19, 2014, at 3:27 p.m. Movant's cellular phone pinged off a cellular tower at 3:27 p.m., 3:29 p.m., and then again at 4:11 p.m. [*Id.* at T. 83-84]. The parties stipulated that the Mr. Fuel truck stop, store no. 753, is located at 23818 Rogers Clark Boulevard, in Ruther Glen, Virginia. [*Id.* at T. 84-85]. Based on the cell-site data, a call to Tony, placed at 3:27 p.m. was made south of the truck stop. [*Id.* at T. 87]. Next, the agent explained that the cell-site data established cellular transmissions on August 20, 2014, starting at approximately 10:27 a.m. until approximately 6:54 p.m., the time during which Movant photographed J.C.M., memorializing one of the beatings. [*Id.* at t. 84-94]. The videotape and rape of J.C.M. is time-stamped by Movant's cellular phone as occurring later that night between 9:56 p.m. and 10:04 p.m. in south Florida and was introduced at trial as government's Exhibit 16A.

When considering any purported conflict between the exact times of the beatings, as testified to by J.C.M. in relation to the cell-site data, even if counsel had further questioned Agent Magnuson or J.C.M. in this regard, Movant's cannot establish that any such discrepancy would have resulted in an acquittal of the charges. There was more than sufficient evidence adduced at trial establishing that Movant transported J.C.M. from Virginia to Florida during which he not only prevented her escape, but beat, raped, and abused her. *See Miers,* 686 F. App'x at 844. As noted by the Eleventh Circuit, the evidence sufficiently established that Movant "communicated several threats to J.C.M., abused her, and forced her to continue with him." *Miers,* 686 F. App'x at 844. Even if, as suggested, further vigorous cross-examination by counsel had discredited J.C.M.'s testimony, there was still more than sufficient evidence of other beatings and rapes during the course of the travel from Virginia to Florida to support the charged offenses.

On this record, Movant cannot demonstrate that he is entitled to relief on this claim, having failed to establish *Strickland* prejudice.

4. Failure to Investigate and Present Exculpatory DNA

In **claim 1(iv)**, Movant claims trial counsel failed to effectively investigate, retrieve, develop, and/or present exculpatory DNA test results obtained from the pants of the kidnapped victim, J.C.M. [CV ECF No. 11 at 12-14]. Movant acknowledges counsel became aware of the DNA/semen results in October 2014 and again in November 2014, when the actual October 23, 2014 DNA report was provided to the defense. [*Id.* at 13]. He faults counsel for doing nothing with the report. [*Id.*].

Movant claims there was "no downside" and "no risk of 'inculpatory' evidence being discovered" by pursuing further "serological and nuclear DNA test[ing]" because Movant was not charged with a "sex offense." [*Id.*]. Movant claims that the DNA test results of the semen and

blood found were already completed by the government and established it did **not** match Movant's DNA. [*Id.*] (emphasis added).

Because counsel did use the October 2014 DNA report, Movant suggests counsel was unprepared during trial to defend and rebut the suggestion that Movant's semen was found on the victim's pants, confirming Movant sexually abused the victim. [*Id.* at 14]. He claims counsel could have utilized the 2014 DNA report and CODIS to conclusively eliminate Movant as the contributor of the DNA found on J.C.M.'s pants which would have resulted in an acquittal of the kidnapping charge. [*Id.*].

Respondent argues Movant is not entitled to habeas corpus relief on this claim. [CV ECF No. 42 at 25-27]. Respondent explains that the October 2014 DNA report **does not** state that the genetic profile was tested against Movant's genetic profile. [CV ECF No. 42 at 25] (emphasis added). Respondent has provided copies of DNA reports dated October 23, 2014, December 3, 2014, and January 16, 2015. [CV ECF Nos. 42-1; 42-2; 42-3].

Respondent explains that Movant's trial started on December 8 and concluded on December 11, 2014. [CV ECF No. 42 at 25; CR ECF Nos. 64, 72]. A month after Movant's trial, a January 2015 DNA Report was obtained that revealed that a routine search of the FBI CODIS database indicated "a possible association" between the DNA sample on the victim's pants and the Movant's DNA sample submitted by the FBI Database Unit of the FBI laboratory. [CV ECF No. 42-2]. However, the report indicated that "a confirmation sample" from Movant would be required in order to make the DNA association "conclusive." [*Id.*].

Given this information, Respondent argues that Movant cannot establish *Strickland* prejudice because he has not demonstrated that further investigation or presentation of this or additional DNA testing would have confirmed that Movant's DNA was or was not matched to

DNA found on the victim's pants. [*Id.*]. To the contrary, the report indicates there is a "possible association." Movant disagrees. [CV ECF No. 65 at 12-15].

As argued correctly by Respondent, it is Movant's burden of proof to establish entitlement to relief. *Beeman,* 871 F.3d at 1221-1222. Movant has failed to do so here. Movant provides no objective evidence, other than his own conclusory statements, that his DNA profile did not match any of the DNA found on the victim's pants. Movant, therefore, cannot establish that counsel's further investigation and DNA testing, nor how the use of the 2014 DNA report would have resulted in an acquittal. In fact, further testing may well have provided additional inculpatory testimony, corroborating the prosecution's 2015 report and further corroborating the victim's trial testimony.

Given the foregoing, this court should not second-guess counsel's decision to not conduct further DNA investigation. *See Conklin v. Schofield,* 366 F.3d 1191, 1204 (11th Cir. 2004); *Dorsey,* 262 F.3d at 1186 (finding movant not entitled to relief because counsel's decision to not call an expert witness was not so patently unreasonable that no competent attorney would have chosen the strategy); *Costa,* 691 F.2d at 1364.  It cannot be said that counsel's decision was not within the range of reasonable professional competence. *See Raulerson v. Warden,* 928 F.3d 987, 998 (11th Cir. 2019).

Further, given the more than sufficient evidence adduced at trial, Movant has not demonstrated that presentation of a DNA expert or further DNA testimony, as alleged, would have altered the outcome of the proceedings. *See Fugate v. Head,* 261 F.3d 1206, 1239, n. 54 (11th Cir. 2001). This is fatal to Movant's claim. Movant cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v.*

*Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).  Thus, Movant is not entitled to relief on this claim.

5. Failure to Expose Victim's False Testimony & Cumulative Errors

In **claim 1(v),** Movant claims trial counsel failed to expose J.C.M.'s false testimony, and their cumulative errors, as set forth in claims 1(iii) and 1(iv), violating Movant's due process rights. [CV ECF No. 11 at 14-15]. Movant is not entitled to relief on this claim.

### a. Failure to Expose J.C.M.'s False Testimony

Movant suggests that J.C.M. "fabricated her story," and denies she was ever "kidnapped" given Agent Magnuson's testimony and the DNA reports finding additional unidentified male semen on the victim's pants. [CV ECF No. 11 at 15].

First, Movant cannot demonstrate *Strickland* prejudice regarding J.C.M.'s purported false testimony. The record reveals that counsel vigorously cross-examined the victim regarding how and where the events transpired, and why she did not attempt to get help or escape earlier in the trip. [CR ECF 112 at T. 96-149]. J.C.M., however, explained that she was trying to find "the right moment" to gather all her belongings and flee from Movant. [*Id.* at T. 144]. Even if counsel had attempted to impeach or further cross-examine the victim as suggested, nothing of record supports a finding that this would have affected the outcome of Movant's trial, resulting in an acquittal of the charges. Consequently, Movant is not entitled to relief on this basis.

### b. Cumulative Errors

To the extent Movant raises a cumulative error claim, such a claim fails. It is well settled that "the cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless error) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *See United States v. Benjamin,* 2020 WL 2300129,

*8 (11th Cir. 2020) (quoting *United States v. Margarita Garcia,* 906 F.3d 1255, 1280 (11th Cir. 2018) (quoting *United States v. Baker,* 432 F.3d 1189, 1223 (11th Cir. 2005), *abrogated in part on other grounds by Davis v. Washington,* 547 U.S. 813, 821 (2006)). In analyzing a cumulative error claim, the Eleventh Circuit instructs courts to first consider the merits of each claim individually, and then examine any errors found "in the aggregate and in light of the trial as a whole" in order to ascertain whether Movant's right to a "fundamentally fair trial" was violated. *Benjamin,* 2020 WL 2300129 at *8 (quoting *Margarita Garcia,* 906 F.3d at 1280) (quoting *Morris v. Sec'y, Dep't of Corr.,* 677 F.3d 1117, 1132 (11th Cir. 2012)). For the reasons discussed in this Report, none of the Movant's claims warrant relief. Because his right to a fundamentally fair trial was not violated, he has not demonstrated deficiency or prejudice under *Strickland* arising from counsel's failure to pursue this non-meritorious claim.

### B. Lack of Jurisdiction Claim

In **claim 3,** Movant asserts that the court lacked jurisdiction to impose a sentence as to Count 1 of the Superseding Indictment. [CV ECF No. 11 at 18; CV ECF No. 25 at 25]. Movant claims there is no "legislative intent" authorizing "cumulative punishment" for multiple convictions of interstate domestic violence or for the kidnapping offense. [*Id.* at 18]. He argues the court was, in fact, required to vacate the kidnapping conviction on double jeopardy grounds. [*Id.*]. To the extent this is a mere reiteration of the arguments raised in relation to claims 1(i), 1(ii), and 2, the claim should be rejected for the reasons previously discussed.

In any event, there was no double jeopardy error or any error arising from the sentences imposed in this case. As will be recalled, Movant was sentence to a lifetime term of imprisonment on the kidnapping offense, and two concurrent terms of ten years of imprisonment on the interstate domestic violence offenses, all to run concurrent with each other. Where, as here, the sentences

were ordered to run concurrently with each other, the Double Jeopardy Clause is not implicated. *See Lee,* 785 F. App'x at 668 (citing *Pacchioli,* 718 F.3d at 1308); *Langford,* 946 F.2d at 805-06). Thus, the sentences were lawfully imposed.

To the extent Movant argues that the court lacked subject matter jurisdiction over the offense, that claim warrants no relief. "The district courts of the United States have original and exclusive jurisdiction over 'all offenses against the laws of the United States.'" *United States v. Peter,* 310 F.3d 709, 713 (11th Cir. 2002) (per curiam) (quoting 18 U.S.C. § 3231); U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority..."). As applied, because the Superseding Indictment charged Movant with violating the "laws of the United States," that is enough to vest subject-matter jurisdiction in a federal court. *United States v. Brown,* 752 F.3d 1344, 1348 (11th Cir. 2014) (citing *Alikhani v. United States,* 200 F.3d 732, 734 (11th Cir. 2000) (per curiam)). As previously discussed in relation to claim 1 of this Report, the Superseding Indictment charged Movant with federal kidnapping, and two counts of interstate domestic violence, all in violation of federal statutes. Thus, the court had jurisdiction over the offenses.

If Movant's argument is viewed as a jurisdictional challenge to the court's ability to sentence him, that claim is properly raised in this § 2255 proceeding. *See United States v. DiFalco,* 837 F.3d 1207, 1215 (11th Cir. 2016) (finding 2255 motion may properly raise claim challenging subject matter jurisdiction to impose enhanced sentence). However, for the reasons expressed in relation to claims 1(i)-(ii) and claim 2 above, there was no double jeopardy violation arising from the imposition of sentences as to the kidnapping conviction and two interstate domestic violence convictions. Even if, as suggested, there were a violation, because the sentences imposed were

ordered to run concurrently with each other, the Double Jeopardy Clause was not implicated. Therefore, Movant is not entitled to relief. Consequently, to the extent he suggests that counsel was also ineffective for failing to pursue this claim, Movant cannot demonstrate *Strickland* prejudice and is thus not entitled to relief.

### C. Prosecutorial Misconduct Claim

In **claim 4,** Movant claims the government engaged in prosecutorial misconduct in 2014 through 2015 by failing to disclose and/or otherwise falsifying "the true facts" that a DNA report in their custody clearly excluded Movant as the perpetrator. [CV ECF No. 43 at 2-6]. As previously discussed in this Report, this precise claim, raised in a March 2020 amendment, is not timely under *Davenport*, 217 F.3d at 1344. In any event, even if timely, the claim warrants no relief.

1. Prosecutorial Misconduct

Movant has not demonstrated that the government witnesses testified falsely, much less that the government knew of or suborned such false testimony. There is nothing of record to support a finding that the government falsified facts or otherwise engaged in prosecutorial misconduct.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. *See United States v. Jackson,* 546 F. App'x 915, 916-17 (11th Cir. 2013) (per curiam) (citations omitted); *Donnelly v. DeChristoforo,* 416 U.S. 637, 642-45 (1974). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances should be considered in the context of the entire trial, *Hance v. Zant,* 696 F.2d 940 (11th Cir. 1983), and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon,* 826 F.2d 1018, 1023

(11th Cir. 1988). Movant has failed to demonstrate that the government failed to disclose or otherwise presented false testimony at trial. Thus, Movant is not entitled to relief on this basis.

2. Brady Violation

Movant also suggests that the government committed a *Brady* violation by suppressing evidence favorable to the defense and material to the defendant's guilt or punishment. *United States v. Vargas,* 792 F. App'x 764, 774 (11th Cir. 2019) (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). To succeed in showing a due process violation from the prosecution's failure to disclose material exculpatory evidence, Movant must establish: "(1) the government's possession of favorable evidence, (2) inability of the defendant to obtain the evidence through reasonable diligence, (3) suppression of the evidence by the government, and (4) a reasonable probability that the evidence would change the outcome of the proceedings." *Vargas,* 792 F. App'x at 774 (citing *United States v. Meros,* 866 F.3d 1304, 1308 (11th Cir. 1989)). Movant is not entitled to relief on this claim because no evidence was suppressed, much less evidence favorable to the defense.

As is the case here, by Movant's own admission, the defense was provided with a copy of the October 2014 DNA report prior to trial. That report, however, did not contain any exculpatory evidence, it simply narrated that there was DNA from unidentified males on the victim's pants, but nowhere does it mention that Movant's DNA was tested against those samples, nor that Movant was excluded as one of the DNA contributors. *See* [CR ECF No. 42-1]. Where Movant had this report and knowledge of its contents prior to trial, he could have requested additional DNA testing as was subsequently done by the government. Thus, there is no evidence of suppression by the government of the 2014 DNA results.

The 2015 DNA results were obtained until well after conclusion of Movant's trial. *See Vargas,* 792 F. App'x at 774 (quoting *Maharaj v. Sec'y for Dep't of Corr.,* 432 F.3d 1292, 1315

(11th Cir. 2005) (alteration adopted) (quoting *United States v. Griggs,* 713 F.2d 672, 674 (11th Cir. 1983)). There is nothing of record to support Movant's suggestion that the government was aware during trial that the CODIS software automatically runs a weekly search to identify potential matches, much less that such a match was obtained in this case after October 2014, but before Movant's trial concluded. Of record, the only evidence is dated January 2015, well after conclusion of Movant's trial, and suggests that there was a "possible association" with male DNA semen found on the victim's pants and Movant's DNA, but further testing would be required to making such a finding "conclusive." [CV ECF No. 42-2]. Certainly, this report is not only far from exculpatory, but it also does not demonstrate that any evidence, exculpatory or otherwise was suppressed. Thus, Movant is not entitled to relief on this claim, having failed to establish deficiency or prejudice under *Strickland* arising from counsel's failure to raise this non-meritorious claim at any stage of the criminal proceedings.

3. Giglio[5] Violation

To the extent Movant suggests there was a *Giglio* violation, Movant must establish that the government knowingly used perjured testimony, or failed to correct what it subsequently learned was false testimony, and that the falsehood was material. *United States v. Vallejo,* 297 F.3d 1154, 1163-64 (11th Cir. 2002) (quoting *United States v. Dickerson,* 248 F.3d 1036, 1041 (11th Cir. 2011)). Under *Giglio,* "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Rodriguez,* 703 F. App'x 784, 786 (11th Cir. 2017) (quoting *United States v. Alzate,* 47 F.3d 1103, 1110 (11th Cir. 1995) (finding the prosecution's "explicit" and "implicit" factual representations" during side bar and cross-examination involved prosecutorial misconduct "and a corruption of the truth-

---

[5]*Giglio v. United States,* 405 U.S. 150, 153-155 (1972).

seeking function of the trial.")). Also, it is well established that the government is required to turn over to a criminal defendant any impeachment evidence that is likely to cast doubt on the reliability of a witness whose testimony may be determinative of guilt or innocence. *United States v. Jordan,* 316 F.3d 1215, 1226 n.16, 1253 (11th Cir. 2003) (citations omitted).

Careful review of the record does not support Movant's claim that the government suborned perjury, much less that the prosecution was fabricated or based on lies. To the contrary, the fact that Movant takes issue with the testimony of prosecution witnesses does not mean that such testimony was untruthful or a product of misconduct on the part of the government. Moreover, the witnesses were subject to cross-examination by defense counsel regarding their credibility and the reliability of their testimony. Defense counsel conducted thorough and forceful cross-examination of the prosecution witnesses. It is apparent that the jury rejected the defense presented and, instead, believed the government's theory and strong evidence presented by the government. Thus, this court should not second-guess the jury's credibility findings here. *See Vargas,* 792 F. App'x at 775 (quoting *United States v. Hernandez,* 743 F.3d 812, 814 (11th Cir. 2014) (finding the jury as exclusive province over credibility of witnesses) (quoting *United States v. Emmanuel,* 565 F.3d 1324, 1334 (11th Cir. 2009)).

4. Conclusion

Movant has failed to establish prosecutorial misconduct. *Rodriguez,* 427 F. App'x at 791. Thus, he cannot establish that counsel was ineffective for failing to pursue any of these non-meritorious issues. He is entitled to no relief on the claim.

## VII. Cautionary Instruction Re *Clisby*[6] Rule

The *Clisby* rule requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d at 936-36; *Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that *Clisby* applies to § 2255 proceedings). However, nothing in *Clisby* requires consideration of claims or arguments raised for the first time in objections. If Movant attempts to raise arguments or further factual support for his claims in objections, the court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)). Further, where a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VIII. Evidentiary Hearing

The burden is on Movant to establish the need for a federal evidentiary hearing. *See Jones v. Sec'y, Fla. Dep't of Corr.,* 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted). No evidentiary hearing is required here because the facts are fully developed in the record before this Court. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).

## IX. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States,* 875 F.3d 1089, 1090 (11th Cir. 2017) (per curiam) (citing 28 U.S.C.

---

[6]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

§ 2253(c)(1)). This Court should issue a certificate of appealability only if Movant makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected Movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Upon consideration of the record, this Court should deny a certificate of appealability because Movant has not made a substantial showing of the denial of a constitutional right.

## X. Recommendations

Based on the foregoing, it is recommended that:

1.      The motion to vacate be DENIED on the merits;

2.      That no certificate of appealability issue; and,

3.      The case CLOSED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Signed this 25th day of August, 2021.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    Timothy John Miers, *Pro Se*
Reg. No. 11031-050
U.S.P. - Tucson
Inmate Mail/Parcels
Post Office Box 24550
Tucson, AZ 85734

Michael E. Gilfarb, AUSA
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
Email: Michael.Gilfarb@usdoj.gov