## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-20740-KMM

TIMOTHY JOHN MIERS,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## **OMNIBUS ORDER**

THIS CAUSE came before the Court upon *pro se* Movant Timothy John Miers's ("Movant") Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ("Mot.") (ECF No. 11). The matter was referred to the Honorable Lisette M. Reid, United States Magistrate Judge, who issued a Report and Recommendation recommending that the Motion be denied. ("R&R") (ECF No. 71). Movant filed objections.[1] ("Objs.") (ECF No. 79). Respondent filed a response to Movant's objections. ("Objs. Resp.")

---

[1] On November 16, 2021, the Court granted Movant's Motion to Exceed the Page Limitation for his objections. (ECF No. 77). The Court's Order directed Movant to "file the objections attached to [that] Motion separately on the docket." *Id.* On November 29, 2021, the Court received Movant's Objections (ECF No. 79) and contemporaneously filed Amended Objections. (ECF No. 80). The Court ordered the Amended Objections stricken because Movant did not ask, and the Court did not grant Movant permission, to file his Amended Objections. (ECF No. 81). On December 28, 2021, the Court received another set of Movant's Amended Objections, which Movant claimed were filed as a matter of course pursuant to Federal Rule of Civil Procedure 15. (ECF No. 85). The Court ordered this second set of Amended Objections stricken because, again Movant did not seek leave to file his Amended Objections, and in any event, his Amended Objections were not pleadings and thus Rule 15 did not apply to them. (ECF No. 86). On January 31, 2022, Movant filed a Motion for Leave to file Amended Objections pursuant to Rule 15, (ECF No. 87), which the Court denied on February 4, 2022. (ECF No. 88).

(ECF No. 84).   The matter is now ripe for review.   As set forth below, the Report and Recommendation is ADOPTED.

Also before the Court is Movant's Motion for Reconsideration of Order Denying Petitioner's Motion for Leave to Amend Objections to the Magistrate's Report.  (ECF No. 89).  As set forth below, the motion is DENIED.[2]

## I.   BACKGROUND[3]

On October 2, 2014, a federal grand jury sitting in the Southern District of Florida returned a Superseding Indictment charging Movant Timothy John Miers with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and two counts of interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(1), (a)(2), and (b)(3).  ("Superseding Indict.") (CR-ECF No. 18).[4]  The case proceeded to trial, where, on December 11, 2014, a jury in Miami, Florida returned a verdict finding Movant guilty of all counts charged in the Superseding Indictment.  (CR-ECF No. 72).

On March 16, 2015, Movant was sentenced to life imprisonment as to Count 1, and 120 months of imprisonment as to each of Counts 2 and 3, all to be served concurrently.  (CR-ECF Nos. 102, 105).  This term of imprisonment is to be followed by five (5) years of supervised release. *Id.*  On March 16, 2015, Movant filed a Notice of Appeal.  (CR-ECF No. 106).  On July 25, 2017,

---

[2]  All citations to filings within the Court's electronic case management system in this Omnibus Order refer to the pagination within the Court's electronic case filing system, not the pagination ascribed by the filing party.

[3]  The Court assumes familiarity with the factual background of this case, which is recounted in *United States v. Miers*, 686 F. App'x 838 (11th Cir. 2017) (per curiam), as well as in the Report and Recommendation, *see* R&R at 8–9.

[4]  Citations of the form "(CR-ECF No. ___)" refer to docket entries of the underlying criminal case, *United States v. Miers*, No. 1:14-cr-20642-KMM (S.D. Fla.).  Citations of the form "(ECF No. ___)" refer to the instant habeas proceedings under § 2255 in *Miers v. United States*, No. 1:19-cv-20740-KMM (S.D. Fla.).

the mandate of the Eleventh Circuit issued, affirming the judgment of conviction.  (CR-ECF No. 122); *see also United States v. Miers*, 686 F. App'x 838, 840 (11th Cir. 2017) (per curiam). On February 20, 2018, the United States Supreme Court denied Movant's petition for a writ of certiorari.  (CR-ECF No. 128).

On February 19, 2019, Movant filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (ECF No. 1).  The Court ordered Movant to file the instant Amended § 2255 Motion because his initial motion was an unwieldy and rambling forty-eight-page document.  *See generally* (ECF No. 9).  Movant filed the instant Amended § 2255 Motion on April 8, 2019.  *See generally* Mot.  And, on March 17, 2020, Movant filed a motion for leave to amend his Amended § 2255 Motion, asserting an additional ground for relief that was not previously raised in his Amended Motion.  *See generally* (ECF No. 43).

Movant's Amended § 2255 Motion raises the following grounds for relief, which the Court has reproduced below from the Report and Recommendation:

1. Ground 1: His trial attorneys . . . were ineffective for failing to:
   i. object to Movant's conviction as to Count 1 on double jeopardy grounds (CV ECF No. 11 at 3–5; CV ECF No. 25 at 2–15);
   ii. object to the jury instruction on interstate domestic violence because it broadened the Movant's statutory maximum sentence exposure thereby resulting in a constructive amendment to Counts 2 and 3 of the Superseding Indictment (CV ECF No. 11 at 6–7; CV ECF No. 25 at 15–17);
   iii. cross-examine . . . the government's "cell site expert," regarding his scientific findings relating to Movant's location during the time when the kidnapping was alleged to have occurred (CV ECF No. 11 at 8–11);
   iv. effectively investigate, retrieve, develop, and/or present exculpatory DNA test results obtained from the pants of the kidnapped victim . . . (CV ECF No. 11 at 12–14); and,
   v. expose [the victim's] false testimony, and their cumulative errors, as set forth in claims 1(iii) and 1(iv) violated Movant's due process rights (CV ECF No. 11 at 14–15).
2. Ground 2: His appellate counsel failed to assign as error on appeal that Movant's double jeopardy rights were violated when he was convicted and

sentenced as to Count 1 to the lesser-included-offense of interstate domestic violence.  (CV ECF No. 11 at 16; CV ECF No. 25 at 18); and,

3. <u>Ground 3</u>: The court lacked jurisdiction to impose a sentence as to Count 1. (CV ECF No. 11 at 18; CV ECF No. 25 at 25).

4. <u>Ground 4</u>: The government engaged in prosecutorial misconduct in 2014 through 2015 by failing to disclose and/or otherwise falsifying "the true facts" that a DNA report in their custody clearly excluded Movant as the perpetrator.  (CV ECF No. 43 at 2–6).[5]

R&R at 2–3 (citations and alterations in original).

On August 25, 2021, Magistrate Judge Reid issued a Report and Recommendation, recommending that the Court deny Movant's Amended Motion on the merits, decline to issue a certificate of appealability, and close this case.  *See generally* R&R.

On November 29, 2021, Movant filed Objections after the Court granted his motion for extension of time and motion for leave to exceed the page limitation.  *See generally* Objs.; (ECF Nos. 73, 77).  On December 17, 2021, the Government filed its response to Movant's objections. *See generally* Objs. Resp.  And, as noted earlier, after the Government filed its response, Movant filed Amended Objections, which the Court ordered stricken from the docket, and a motion for leave to file amended objections, which was denied.  (ECF Nos. 85–88).

Now, Movant objects to the findings and recommendations of the Report and Recommendation as set forth below.  *See generally* Objs.

## II.    LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must consider *de novo* any objection to the magistrate judge's recommendation."  Fed. R. Civ. P. 72(b)(3).  A *de novo* review is required if a party files "a proper, specific objection" to

---

[5]  The Report and Recommendation notes that Movant's fourth ground for relief was asserted in an untimely, supplemental amendment.  R&R at 3, 6.

a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

However, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

## III.   DISCUSSION

Movant raises thirty (30) objections to the Report and Recommendation.  The Court notes that Movant groups his objections that appear to relate to the Report and Recommendation's

findings on Ground 3 and Ground 4, identified above, with his objections to the Report and Recommendation's findings on Ground 1 and Ground 2, which advance ineffective assistance of counsel arguments.  Specifically, Movant objects to Ground 3 and Ground 4 findings within the Report and Recommendation that incorporate or reference findings on Ground 1 and Ground 2 within the Report and Recommendation.  Thus, the Court, like Respondent, groups Movant's individual objections where they advance such overlapping arguments relating to the same findings or recommendations in the Report and Recommendation, or where they relate to findings or recommendations dependent on earlier findings on Ground 1 or Ground 2:

1.  Objection No. 1: Movant renews his previous objections, (ECF Nos. 39, 44), to Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38), and February 21, 2020 Paperless Order, (ECF No. 41).

2.  Objection No. 2: Movant objects to the entirety of the Report and Recommendation because, according to Movant, it erroneously considers Movant's initial Reply, (ECF No. 65), instead of his Amended Reply (ECF No. 67).

3.  Objection Nos. 3 through 17: Movant claims that the Report and Recommendation misapplies governing caselaw under the Fifth Amendment's Double Jeopardy Clause and fails to find that kidnapping is a lesser included predicate offense constituting the element "crime of violence" within the offense of interstate domestic violence.  Thus, the Report and Recommendation erroneously finds (1) that kidnapping and interstate domestic violence are separate offenses for purposes of the Double Jeopardy Clause, (2) his trial and appellate counsel were not ineffective for failing to raise this issue, (3) there was no constructive amendment of the Superseding Indictment, and generally, (4) his sentence is not illegal.

4.  Objection Nos. 18 through 22: Movant asserts the Report and Recommendation misconstrues his constructive amendment claim as a material variance claim with respect to the jury instructions at issue in his underlying criminal case.  As to the jury instructions, Movant asserts that the Report and Recommendation erroneously finds the Superseding Indictment provided sufficient notice that the jury would be instructed to consider two additional and alternative definitions for "serious bodily injury."  According to Movant, these two additional and alternative definitions result in surplusage when construing § 2261(b), violate the "absurdity doctrine" canon of statutory interpretation, and are the result of Magistrate Judge Reid "legislating from the bench."  Thus, Movant contends that the Report and Recommendation erroneously finds that his counsel were not ineffective when they declined to pursue this claim.

5. <u>Objection Nos. 23 through 27</u>: Movant asserts that the Report and Recommendation erroneously finds that (1) there was sufficient evidence to conclude that Movant committed the crimes charged "from Virginia to Florida," and (2) there was evidence in the record of other beatings and sexual assaults during the course of that travel. Movant also objects to the Report and Recommendation's findings as they relate to the Confrontation Clause, because Movant "has no idea what the Magistrate was addressing" on that point, because he claims his grounds for vacatur do not arise under that clause. And, Movant objects to the Report and Recommendation's failure to address the Government's bolstering the victim's testimony.

6. <u>Objections Nos. 28 and 29</u>: Movant objects to the Report and Recommendation in its entirety and appears to incorporate by reference objections from earlier-filed objections, (ECF No. 44), as they relate to his claim that his trial counsel was ineffective for failing to pursue exculpatory DNA evidence. Movant objects to the Report and Recommendation's conclusion that he provides no evidence regarding his DNA claim, and argues that he requires a hearing on this issue.

7. <u>Objection 30</u>: As to the Report and Recommendation's findings on Movant's cumulative error claim, Movant objects to the Report and Recommendations conclusions, which Movant characterizes as confusing. Movant appears to argue that the evidence against him does not support his conviction.

*See generally* Objs.

The Court reviews each group of objections in turn, beginning with Objection No. 1.

**A.      Objection No. 1: Movant's Prior Objections.**

In Objection No. 1, Movant renews his objections to Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38), and February 21, 2020 Paperless Order, (ECF No. 41). Objs. at 2. In response, Respondent asserts that Movant's previous objections all related to procedural matters and that, to the extent they address substantive matters, those objections are raised again elsewhere in Movant's instant Objections. Objs. Resp. at 1.

In both Paperless Orders, Magistrate Judge Reid did not make any findings dispositive of any claim or defense. Because Movant's objections, (ECF Nos. 39, 44), to Magistrate Judge Reid's January 21, 2020 and February 21, 2020 Paperless Orders relate to matters "not dispositive of a party's claim or defense," the clearly erroneous standard applies. Fed. R. Civ. P. 72(a) ("The

district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").

Generally, the Court does not find clear error except as set forth below, and where the Court does find error, such error does not require remedial action from this Court.

Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38), denied Movant's Motion for Sanctions, (ECF No. 34), and denied as moot Movant's Motion for Extension of Time to File a Reply, (ECF No. 30).[6]  Movant's renewed objections, as incorporated in Objection No. 1, are moot to the extent they challenge Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38), insofar as that order denied as moot his Motion for Extension of Time to File a Reply, (ECF No. 30).  At this point in the proceedings, the record indicates that Movant has had an opportunity to file reply briefs, including his Reply to Respondent's Second Amended Response in Opposition to his Motion to Vacate, (ECF No. 65), which was considered in the Report and Recommendation presently pending before this Court.  *See* R&R at 2.  To the extent Movant's renewed objections challenge Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38), insofar as that order denied his Motion for Sanctions, (ECF No. 34), the arguments contained in Movant's renewed objections are largely the same as those in his instant Objections. *See generally* Objs.  This Court finds no reason to address the two sets of objections separately. In addition, the Court finds that no clear error was committed in concluding that the Motion for Sanctions was appropriately denied because Respondent's arguments are not frivolous or advanced for an improper purpose.  *See* (ECF No. 38).  Thus, the Court finds no clear error necessitating the reversal of Magistrate Judge Reid's January 21, 2020 Paperless Order, (ECF No. 38).

---

[6]  To the extent Movant's Motion to Stay, (ECF No. 30), was, in effect, a motion for an extension of time, the motion was likewise denied as moot.  *See* (ECF No. 38).

Magistrate Judge Reid's February 21, 2020 Paperless Order, (ECF No. 41), summarily granted Respondent's Motion for Leave to Supplement Response to Defendant's § 2255 Motion, (ECF No. 40), the same day that motion was filed.  Movant filed twenty pages of objections containing ten individually numbered objections challenging that order, which he now purports to incorporate within the instant Objections.  (ECF No. 44).  The Court declines to give credence to Movant's unsubstantiated claims that the February 21, 2020 Paperless Order, (ECF No. 41), must have been the result of improper *ex parte* communications between Magistrate Judge Reid and Respondent because Magistrate Judge Reid granted Respondent's motion shortly after it was filed. While it is true that the Local Rules of the Southern District of Florida provide a fourteen (14) day response period to oppose a motion, followed by a seven (7) day reply period, Movant has now had an opportunity to file objections to the Report and Recommendation and, in doing so, has raised largely the same substantive arguments here as he did there, notwithstanding the arguments contained in his Reply to the Government's Second Amended Response, (ECF No. 65).  And, to the extent Movant claims Respondent was permitted to file a supplemental response to his Amended Motion to Vacate without attaching a copy of the proposed amendment, as required by Local Rule 15.1, that Local Rule does not apply because it is applicable to ***pleadings***—a response to a motion is not necessarily a pleading as defined by Federal Rule of Civil Procedure 7(a).  *See* Fed. R. Civ. P. 7(a); S.D. Fla. L.R. 15.1.

In sum, the Court is not persuaded that Magistrate Judge Reid's Orders, (ECF Nos. 38, 41) are clearly erroneous or, where error has been committed, that remedial relief is required from this Court.  Accordingly, Movant's objections (ECF Nos. 39, 44) are overruled, and Movant's Objection No. 1 to the Report and Recommendation is overruled.

**B.      Objection No. 2: Movant's Amended Reply.**

In Objection No. 2, Movant challenges the Report and Recommendation in its entirety because the Report and Recommendation considered Movant's initial Reply, (ECF No. 65), instead of his Amended Reply, (ECF No. 67).  Objs. at 2.  Respondent argues that there are no material differences between Movant's Reply and his Amended Reply, and Movant has reasserted all the arguments he made in both his Reply and Amended Reply within his Objections to the Report and Recommendation.  Objs. Resp. at 2.

It is true that the Report and Recommendation considered Movant's Reply.  R&R at 2.  It is also true that Movant filed his Amended Reply without seeking leave from the Court.  In any event, the Court agrees that largely the same arguments in Movant's Reply are advanced in his Amended Reply.  In fact, Movant confirms as much in his Amended Reply.  *See* (ECF No. 67) at 17 ("[The Amended Reply] only expands the facts with greater particularity previously alleged in the original reply [(ECF No. 65)] and contains only memoranda of law ***already before this Court***." (emphasis added)).

Accordingly, the Court finds no clear error; thus, Movant's Objection No. 2 is overruled.

**C.      Ineffective Assistance of Counsel Principles.**

As noted above, Movant appears to have grouped his objections to findings on Ground 3 and Ground 4 within the Report and Recommendation with his objections to findings on Ground 1 and Ground 2 within the Report and Recommendation (*i.e.*, Movant's ineffective assistance of counsel claims). Accordingly, the Court addresses Movant's objections together where they advance overlapping arguments or are dependent on findings made as to Ground 1 and 2 of the Report and Recommendation.  Before proceeding to Movant's remaining Objections, which relate

to various ineffective assistance of counsel findings in the Report and Recommendation, the Court first reviews principles applicable to ineffective assistance of counsel claims.

To establish a claim of ineffective assistance of counsel, Movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] petitioner's failure to establish ***either*** deficient performance or prejudice is fatal to a *Strickland* claim." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (citation omitted) (emphasis added). "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013) (quoting *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009)).

To prove deficiency, Movant must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Strickland*, 466 U.S. at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (collecting cases). That is, "[a] lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

To prove prejudice, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's failure to raise a meritless claim is not prejudicial under *Strickland*. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014).

**D.      Objections Nos. 3 Through 17: Double Jeopardy Clause Objections.**

In the Report and Recommendation, Magistrate Judge Reid found that Movant's counsel, both trial and appellate, were not ineffective for failing to raise an alleged Fifth Amendment Double Jeopardy Clause violation with respect to Movant's conviction and sentence. *See* R&R at 9–13. Specifically, Magistrate Judge Reid rejected Movant's argument in his Amended Motion that kidnapping and interstate domestic violence are multiplicitous for purposes of the Double Jeopardy Clause, and, therefore, his counsel did not fail to raise that issue upon Defendant's conviction, at sentencing, and on appeal, as the argument would not have succeeded. *See id.* at 13.

Now, in Objections Nos. 3 through 17, the thrust of Movant's argument is that the Report and Recommendation incorrectly concluded that kidnapping and interstate domestic violence each require elements that the other does not, as kidnapping is a lesser included predicate offense constituting the "crime of violence" element within the offense of interstate domestic violence. *See* Objs. at 3–17. Thus, Movant argues that the Report and Recommendation erred in finding that (1) kidnapping and interstate domestic violence are separate offenses for purposes of the Double Jeopardy Clause, and (2) his trial and appellate counsel were not ineffective by failing to raise this issue. *Id.*

The Court agrees that the argument is meritless, thus Movant's counsel was not ineffective for failing to raise this alleged Double Jeopardy Clause violation upon Movant's conviction and on appeal. The Court begins by reviewing principles of the Double Jeopardy Clause.

**1.   Double Jeopardy Principles.**

The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause consists of three separate protections: "[i]t protects against a second

12

prosecution for the same offense after acquittal,"; "[i]t protects against a second prosecution for the same offense after conviction,"; and "[i]t protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1989) (footnotes omitted). An indictment violates the Double Jeopardy Clause's protection against multiple punishments for the same offense if it is "multiplicitous—that is, 'if it charges a single offense in more than one count.'" *United States v. Gonzalez*, 834 F.3d 1206, 1219 (11th Cir. 2016) (quoting *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008)).

Courts apply what is commonly known as the *Blockburger* test to determine whether an indictment is multiplicitous. That test is as follows: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). This test is "one of statutory interpretation in which [courts] examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments." *Williams*, 527 F.3d at 1240. That is, an indictment ***may*** be multiplicitous where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*." *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983); *see also id.* at 366 ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

### 2. Application.

The thrust of Movant's Objection Nos. 3 through 17 is that the federal kidnapping offense is a lesser included predicate offense within the federal crime of interstate domestic violence,

constituting the element "crime of violence," thus the Report and Recommendation incorrectly concluded that Movant's counsel were not ineffective when they did not raise this Double Jeopardy Clause issue both after Movant was convicted and later on appeal. *See generally* Objs.

This Court disagrees—Movant's counsel was not ineffective for failing to raise this issue because it is meritless. The Court applies the *Blockburger* Test and arrives at the same conclusion as the Report and Recommendation. Likewise, the Court rejects Movant's argument that kidnapping is a lesser included predicate offense constituting the element "crime of violence" within interstate domestic violence.

Movant was charged and convicted of one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and two counts of interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(1), (a)(2), and (b)(3).

The federal kidnapping statute makes it unlawful for a defendant to "seize[], confine[], inveigle[], decoy[], kidnap[], abduct[], or carr[y] away and hold[] for ransom or reward or otherwise any person . . . when the person is willfully transported in interstate or foreign commerce." 18 U.S.C. § 1201(a)(1).

The federal interstate domestic violence statute makes it unlawful for "[a] person who travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner." 18 U.S.C. § 2261(a)(1). The statute also makes it unlawful for "[a] person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce . . . by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to

facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner." 18 U.S.C. § 2261(a)(2).

The Eleventh Circuit identified the elements of kidnapping under § 1201(a)(1) upon review of Movant's case on direct appeal: "to support a conviction under 18 U.S.C. § 1201(a), the government must demonstrate that the defendant (1) knowingly and willfully (2) transported in interstate commerce (3) an unconsenting person who was (4) held for ransom, reward, or otherwise." *United States v. Miers*, 686 F. App'x 838, 843 (11th Cir. 2017) (citing *United States v. Lewis*, 115 F.3d 1531, 1535 (11th Cir. 1997)).

In contrast, the elements of the crime of interstate domestic violence under § 2261(a)(2) are: "(1) the defendant is a spouse, intimate partner, or dating partner of the victim; (2) the defendant caused the victim to travel in interstate commerce by force, coercion, duress, or fraud; and (3) the defendant committed a crime of violence against the victim in the course of, as a result of, or to facilitate the interstate travel." *United States v. Larsen*, 615 F.3d 780, 787 (7th Cir. 2010) (citing 18 U.S.C. § 2261(a)(2)). Similarly, the elements of interstate domestic violence under § 2261(a)(1) require that the defendant travel in interstate commerce, in place of causing the victim to travel in interstate commerce. *See* 18 U.S.C. § 2261(a)(2).

Upon review of the elements of both kidnapping and interstate domestic violence, each offense requires proof beyond a reasonable doubt of elements that the other does not. Magistrate Judge Reid correctly recognized in the Report and Recommendation that kidnapping does not require that the victim be a "spouse, intimate partner, or dating partner," as is required under both interstate domestic violence offenses. R&R at 13; *see also* 18 U.S.C. § 2261(a)(1), (a)(2). Likewise, Magistrate Judge Reid correctly observed that interstate domestic violence, under both § 2261(a)(1) and § 2261(a)(2), does not require that the victim be held for "ransom, reward, or

otherwise," as is required under the federal kidnapping offense.   R&R at 13; § 1201(a). Accordingly, because, as noted above, both offenses require proof of a fact which the other does not, the Double Jeopardy Clause was not violated, and thus, Movant's counsel were not ineffective for failing to raise the meritless argument he now advances on collateral attack.   *Pinkney*, 876 F.3d at 1297.

Further, Movant assumes without conclusively establishing that kidnapping is necessarily a crime of violence such that it is a predicate offense constituting the "crime of violence" element within interstate domestic violence.   However, it is not entirely clear that kidnaping is a crime of violence that would necessarily be incorporated as a lesser included predicate offense within interstate domestic violence.   In fact, in other contexts, such as brandishing a firearm in furtherance of a crime of violence under § 924(c), the Eleventh Circuit has recognized that kidnapping is ***not*** a crime of violence.[7]   *See, e.g.*, *United States v. Simmons*, 847 F. App'x 589, 592–93 (11th Cir. 2021) ("Our recent decision in *United States v. Gillis*, 938 F.3d 1181, 1206 (11th Cir. 2019), makes clear that federal kidnapping, 18 U.S.C. § 1202(a),[8] does not qualify as a crime of violence under section 924(c).").

Moreover, multiple circuits have rejected arguments that kidnapping and interstate domestic violence are multiplicitous under the Double Jeopardy Clause:

> The kidnapping statute requires that the state show that the victim was abducted
> and was held for purposes beneficial to the kidnapper at the time state lines were

---

[7]   To the extent Movant argues that there was no other crime alleged other than kidnapping that could serve as the "crime of violence" element for the interstate domestic violence offenses alleged, the Report and Recommendation notes that the jury was instructed that a "crime of violence" is defined as "the use, attempted use or threatened use of physical force or harm against a person or conduct which, by its nature, presents a serious potential risk of physical injury to another."   (CR-ECF No. 114) at 202–03, 205.

[8]   This Court respectfully observes that *Gillis* discusses § 1201(a).   *See United States v. Gillis*, 938 F.3d 1181, 1206 (11th Cir. 2019).

crossed. The interstate domestic violence statute requires that the victim be a spouse or intimate partner of the defendant, that the defendant crossed state lines with the intent to injure, harass, or intimidate the victim, that a crime of violence was engaged in intentionally either in the course of or as the result of such travel, and that as a result of that crime of violence, bodily injury to the victim occurred. It can therefore be said that a kidnapping conviction requires proof of a fact not required by the interstate domestic violence statute (*e.g.*, that the victim be held for purposes beneficial to the defendant at the time state lines were crossed), and that a conviction for interstate domestic violence requires proof of a fact not required by the kidnapping statute (*e.g.*, that the victim be a spouse or intimate partner, that bodily injury to the victim resulted). *See United States v. Sickinger*, 179 F.3d 1091, 1093 (8th Cir. 1999) (identifying facts that are unique to both § 1201(a) and § 2261(a)); *United States v. Bailey*, 112 F.3d 758, 766–67 (4th Cir. 1997) (same); *United States v. Frank*, 8 F. Supp. 2d 253, 282 n.26 (S.D.N.Y. 1998) (same). Moreover, we cannot say that the district court committed plain error when it determined Lankford's sentence. ***That kidnapping is a lesser included offense of interstate domestic violence is by no means clear or obvious under current law***. *See United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (defining "plain" error to be error that is "clear" or "obvious"); *Sickinger*, 179 F.3d at 1093 (considering whether kidnapping was a lesser included offense within interstate domestic violence and finding no plain error).

*United States v. Lankford*, 196 F.3d 563, 578 (5th Cir. 1999) (emphasis added); *see also United States v. Sickinger*, 179 F.3d 1091, 1093 (8th Cir. 1999) (noting that it was not plain error for the district court to sentence the defendant for both kidnapping and interstate domestic violence to concurrent terms of imprisonment); *United States v. Bailey*, 112 F.3d 758, 767 (4th Cir. 1997) ("[W]e find that the interstate domestic violence statute proscribes conduct distinct from that criminalized by the kidnapping statute."); *United States v. Larsen*, 615 F.3d 780, 787 (7th Cir. 2010) ("Stated differently, Larsen's argument is that the crime of interstate domestic violence encompasses the crime of kidnapping. We disagree. The kidnapping statute requires that the defendant 'hold[ ] [the victim] for ransom or reward or otherwise.' This 'holding' requirement is an essential element of kidnapping and must be established in every case." (alterations in original)).

Accordingly, Movant fails to establish that his counsel were ineffective because they failed

to argue in the district court and on appeal that his conviction and sentence violated the Double

Jeopardy Clause because the argument is without merit.  *Freeman*, 536 F.3d at 1233.  Objection

Nos. 3 through 17 are overruled.

  **E.**  **Objection Nos. 18 Through 22: Constructive Amendment and Improper Jury Instructions.**

  In these objections, Movant first asserts the Report and Recommendation misconstrued his

constructive amendment claim as a material variance claim with respect to the jury instructions at

issue in this case.  Objs. at 16–17.  To the extent Movant objects to the Report and

Recommendation because he claims Magistrate Judge Reid "converted [his] constructive

amendment claim to a material variance claims," Objs. at 17, this Court disagrees.  The Report

and Recommendation discussed both constructive amendment and material variance within the

context of Movant's ineffective assistance of counsel claim, and concluded that, based on the

charges in the Superseding Indictment, the instructions provided to the jury at Movant's trial, and

the evidence presented at Movant's trial, ***neither*** constructive amendment ***nor*** material variance

occurred.  *See* R&R at 13–20.  Thus, Magistrate Judge Reid found that Movant's trial counsel were

not ineffective by failing to object to the jury instructions because such an objection would have

been non-meritorious.  *Id.*  The Court agrees with Respondent that the Report and

Recommendation's discussion of material variance was likely done in an effort to liberally

construe Movant's Amended Motion to Vacate under § 2255.  *See* Objs. Resp. 4; *see also* R&R at

2 ("Construing the § 2255 motion liberally as afforded *pro se* litigants . . . .").  Movant's Objection

No. 18 to the Report and Recommendation is therefore overruled to the extent he claims the Report

and Recommendation changed the ground for relief he asserted within his ineffective assistance

of counsel claim.

The remainder of Objection Nos. 18 through 22 argue that the Report and Recommendation engaged in improper statutory interpretation constituting "legislating from the bench, prescribing penalties for offenses from the bench and rendering the absurdity canon superfluous." Objs. at 19. Movant argues that Magistrate Judge Reid incorrectly concluded that his trial counsel were not ineffective by failing to object to the jury instructions on interstate domestic violence and raise the issue of constructive amendment of the Superseding Indictment. *Id.* at 20. This Court disagrees because, again, the argument would not have succeeded if it had been raised.

Movant was charged in the Superseding Indictment in both Count 2 and Count 3 with committing interstate domestic violence, with penalties charged under § 2261(b)(3).[9] *See generally* Superseding Indict. The Report and Recommendation observed that § 2261(b)(3) provides that "[a] person who violates this section of section 2261A shall be fined under this title, imprisoned . . . for not more than 10 years, if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense." 18 U.S.C. § 2261(b)(3). Thus, Magistrate Judge Reid looked to the definitions provided in § 2266, and the Report and Recommendation noted that "the term 'serious bodily injury' has the meaning stated in section 2119(2)," which is the federal carjacking statute. R&R at 16 (citing 18 U.S.C. § 2266(6) (2013)). The Report and Recommendation traced the definition of "serious bodily injury," observing that the term "serious bodily injury" in § 2119(2) is "defined in section 1365 of this title, including any conduct

---

[9] Count 2 charged that Movant "did travel in interstate commerce with the intent to kill, injure, harass, and intimidate J.C.M., an intimate partner and dating partner, and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M., in violation of" 18 U.S.C. § 2261(a)(1) and (b)(3). *See generally* Superseding Indict. Count 3 charged that Movant "did cause J.C.M., his intimate partner and dating partner, to travel in interstate commerce by force, coercion, duress, and fraud, and did, in the course of, as a result of, and to facilitate such conduct and travel, commit and attempt to commit a crime of violence against J.C.M., in violation of" 18 U.S.C. § 2261(a)(2) and (b)(3). *Id.*

that . . . would violate section 2241 or 2242 of this title." R&R at 16–17 (quoting 18 U.S.C. § 2119(2)). Magistrate Judge Reid next noted that, under § 1365(h)(3), the term "serious bodily injury" means "bodily injury which involves (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." R&R at 17 (quoting 18 U.S.C. § 1365(h)(3)). And, the Report and Recommendation further noted that § 2241(a) provides that it is a crime to "knowingly cause[] another person to engage in a sexual act (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." R&R at 17 (quoting 18 U.S.C. § 2241(a)). Magistrate Judge Reid observed that the jury at Movant's trial was instructed that "serious bodily injury" under § 2261(b)(3) means

> bodily injury which involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ or mental faculty or a sexual act committed by either use of force against a person, that is, J.C.M., or by threatening or placing J.C.M. in fear that any person will be subjected to death, serious bodily injury or kidnapping.

R&R at 18 (quoting CR-ECF No. 114 at 203, 205–06). Accordingly, because the jury instructions tracked the statutory scheme, the Report and Recommendation concluded that no constructive amendment of the Superseding Indictment occurred, much less a material variance, therefore Movant's trial counsel were not ineffective by failing to pursue this non-meritorious claim. R&R at 20.

The Court agrees with the Report and Recommendation that the instructions provided to the jury tracked the statutory scheme under which Movant was charged in the Superseding Indictment, as explained by Magistrate Judge Reid, and therefore the jury instructions did not result in constructive amendment of the Superseding Indictment. Accordingly, the Court agrees

that Movant's counsel was not ineffective by failing to object to the jury instructions.  The law in the Eleventh Circuit is clear that the definition of "serious bodily injury" within § 2119(2), which is directly cross-referenced in § 2266(6), includes the conduct criminalized under § 2241.  *See United States v. Dunn*, 440 F. App'x 887, 890 (11th Cir. 2011) ("Pursuant to 18 U.S.C. §§ 2119(2) and 2241(a)(1), (2), 'serious bodily injury' includes 'knowingly caus[ing] another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping.'" (alterations in original)).  The jury instructions followed this Eleventh Circuit precedent and did not constructively amend the Superseding Indictment—Movant's counsel were not ineffective by failing to object on constructive amendment grounds, because, as discussed above, the argument would not have succeeded.

According to Movant, "any interpretation of section 2261(b)(3) (physical injury) (weapons) that would include the aggravated sexual abuse provisions from section 2261(b)(4) would render section 2261(b)(4) superfluous, void, or insignificant."  Objs. at 18.

The Court disagrees.  Section 2261(b)(4) provides:

> A person who violates this section or section 2261A shall be fined under this title, imprisoned . . . . as provided for the applicable conduct under chapter 109A if the offense would constitute an offense under chapter 109A (without regard to whether the offense was committed in the special maritime and territorial jurisdiction of the United States or in a Federal prison).

§ 2261(b)(4).  Chapter 109A of Title 18 of the United States Code is entitled "Sexual Abuse" and includes § 2241.  However, § 2261(b) sets forth the ***penalties*** for violating § 2261(a).  Interpreting § 2261(b)(3) to include aggravated sexual assault does not necessarily renders § 2261(b)(4) superfluous, as (b)(3) and (b)(4) set forth different maximum penalties: the statutory maximum penalty under § 2261(b)(3) is ten (10) years of imprisonment, whereas § 2261(b)(4) provides for

imprisonment "as provided for the applicable conduct under chapter 109A," 18 U.S.C. § 2261(b)(4), which, for a violation of § 2241(a) for example, could be "for any term of years or life, or both," 18 U.S.C. § 2241(a). Movant fails to establish that this violates the absurdity doctrine, as Movant asserts—Movant cites to no authority establishing that it was absurd for Congress to create discretion in this way. *See United States v. Cespedes*, 151 F.3d 1329, 1332 (11th Cir. 1998) ("The Supreme Court has unambiguously upheld the prosecutor's ability to influence the sentence through the charging decision."). Accordingly, the Court does not agree that Movant's counsel would have been able to obtain the relief Movant seeks, and therefore, they were not ineffective. *See Freeman*, 536 F.3d at 1233. Thus, Movant's Objection Nos. 18 through 22 are overruled.

### F.    Objections 23 Through 27: Failure to Effectively Cross-Examine the Government Cell-Site Expert Witness.

In the Report and Recommendation, Magistrate Judge Reid found that Movant's counsel were not ineffective by failing to effectively cross-examine the government's cell-site expert witness regarding his scientific findings. R&R at 20–23. In his Amended Motion, Movant argued that the government's cell-site expert witness

> provided irrefutable direct evidence that proves the material testimony of J.C.M., regarding the alleged kidnapping after leaving the Mr. Fuel Truckstop [in Virginia], is an absolute impossibility and completely false. S.A. Magnuson has conclusively shown Mr. Miers' locations approximately twenty (20) miles south of the truckstop at 3:27 & 3:29 P.M.; and approximately sixty (60) miles south of the truckstop at 4:11 P.M.; when [he] was physically standing inside the truckstop at 3:04 P.M.. Mr. Miers could not have reached these locations unless traveling non-stop at highway speeds (65 MPH). . . . The testimony of J.C.M., the only direct victim witness, is completely false; as S.A. Magnuson's cell site location tracking analysis clearly and indisputably proves.

Mot. at 11 (emphasis omitted). Movant claimed that this is because the government's cell-site expert's testimony was

> in direct opposition to J.C.M.'s material testimony of the kidnapping she alleged took place.  J.C.M. testified: "After we left Mr. Fuel [in Virginia] . . . [Movant] stopped the truck on the side of the road . . ."  J.C.M. further testified to various alleged abuses accompanying this alleged kidnaping that continued for, "an hour and a half or two hours."

Mot. at 10 (footnotes omitted) (ellipses in original).

The Report and Recommendation concluded that "even if counsel had further questioned" the government's cell-site data expert witness, "Movant[] cannot establish that any such discrepancy would have resulted in an acquittal of the charges," thus he cannot demonstrate prejudice under *Strickland*.  R&R at 20–23.  The Report and Recommendation noted that Movant "misinterpret[s] the record because his convictions were not based solely on that one, isolated incident," in relation to the Mr. Fuel truck stop in Virginia, "but rather spanned numerous days in August [of] 2014."  *Id.* at 21.  Further, the Report and Recommendation noted that "[e]ven if, as suggested, further vigorous cross-examination by counsel had discredited J.C.M.'s testimony, there was still more than sufficient evidence of other beatings and rapes during the course of travel from Virginia to Florida to support the charged offenses."  *Id.* at 23.

In his Objections, Movant asserts that on direct appeal the Eleventh Circuit "found—based on the very testimony in question here—that Miers transported J.C.M. 'from Virginia to Florida,' against her will.  Thus, if not 'from Virginia to Florida,' then no federal hook."  Objs. at 22 (emphasis omitted).  Movant claims that "the false testimony—the only evidence in the record— 'from Virginia to Florida', is the 'isolated incident in question.'"  *Id.*  Movant relies on the fact that his "offenses were found by the Circuit Court to be based 'from Virginia to Florida'—not any location north of Virginia, but, specifically, Ruthers Glen, VA. (to FLA)."  *Id.*  Movant continues, arguing that Magistrate Judge Reid is "dead wrong" that there is other evidence, as "in fact no evidence of any wrong doing [sic] from Virginia at 3:04 P.M. until Stewart, [sic] Florida at 10:27

A.M" because "the alleged false testimony 'from Virginia to Florida' DID NOT contain one single word of sexual misconduct/rape."  *Id.* at 23.   Movant also objects to the Report and Recommendation's failure to address the government's bolstering the victim's testimony—Movant claims this testimony was false.  *Id.* at 24

To the extent in his Objections that Movant latches on to the phrase "from Virginia to Florida" in the Eleventh Circuit opinion reviewing his case on direct appeal, it is correct that the Eleventh Circuit stated as follows:

> J.C.M. testified that Mr. Miers inflicted violent acts upon her under threat of death to her and her family for his own sexual gratification.  *See id.* (concluding that the language "ransom, reward, or otherwise" encompassed an explicit admission that defendant kidnapped victim for "companionship").  **The evidence also supported a finding that Mr. Miers willfully transported J.C.M. across state lines from Virginia to Florida**.  A reasonable jury could therefore conclude that the evidence established that Mr. Miers kidnapped and willfully transported J.C.M.
>
> [ . . . ]
>
> **The evidence sufficiently supported a finding that Mr. Miers communicated several threats to J.C.M., abused her, and forced her to continue with him from Virginia to Florida**.  Accordingly, a reasonable jury could conclude that Mr. Miers formulated the requisite intent at the time he crossed state lines, and abused J.C.M. in the course of such travel, therefore satisfying the interstate commerce element.

*Miers*, 686 F. App'x at 844 (emphasis added).   However, Movant's Objections neglect that the Eleventh Circuit opinion also notes as follows

> **J.C.M. testified that for several days, Mr. Miers raped, bound, and physically and verbally abused her.  On August 19, Mr. Miers stopped at a truck stop in Virginia, where he and J.C.M. entered private showers.  There he locked her up against her will and strangled, beat, and spit on her.**  After leaving the truck stop, they continued to drive and Mr. Miers beat J.C.M. until she admitted her infidelity.  Mr. Miers then strangled J.C.M., bound her with duct tape, gagged her, and told her he was going to kill her.  The abuse continued, and Mr. Miers filmed while he raped and demeaned her.  J.C.M. was finally able to escape when they arrived in Medley, Florida, on August 21, 2014.

*Id.* at 841 (emphasis added).  The Eleventh Circuit opinion **did not** find, as Movant suggests in his

Objections, that the conduct upon which his conviction rests was an isolated incident that occurred over the course of one or two hours *after* departing the Mr. Fuel truck stop in Virginia.  Movant's Objections on this point appear to be based on a misunderstanding of the record.

In any event, the Court agrees with the Report and Recommendation that Movant fails to show that he was prejudiced when his trial counsel did not cross-examine the government's expert on the specific alleged conflict between the cell-site data and the victim J.C.M.'s testimony.  As Respondent correctly notes, "[t]he jury had this 'conflict' for their consideration.  Counsel's supposed deficient performance only failed to point out what was already before the jury (*i.e.*, counsel's []ineffective cross-examination did not keep a matter from the jury's consideration)." (ECF No. 42) at 21.  And, a reasonable jury could have concluded, as Respondent persuasively argued in its response to Movant's Amended Motion that:

> even if counsel had engaged in the cross-examination Movant suggests, it would not have made a difference.  Here, the jury could have resolved the supposed inconsistency by concluding that J.C.M.'s harrowing experience preceding and during that stop led her to believe that the abuse and torture lasted for "an hour and half to two hours" because that is what it felt like to J.C.M., though not technically correct.  Likewise, the jury could have heeded Agent Magnuson's cautionary testimony that cellular telephones "typically connect" to the nearest cell tower— meaning, not always (e.g. [CR-DE 113]:67-8, 71, 76, 94, 96-8).  The jury could also have concluded that Movant travelled the "impossible" distance in the given time because he was travelling more than 65 m.p.h. he claimed in his motion.

(ECF No. 42) at 24–25.  Accordingly, given the record, the fact that this conflict was already before the jury, the fact that Movant's counsel had an opportunity to cross-examine J.C.M., and the substantial other evidence in the record sufficient to support Movant's conviction even if Movant's counsel had cross-examined J.C.M. on this alleged conflict,[10] the Court agrees with Magistrate

---

[10]  This Court also agrees with the Report and Recommendation that there was sufficient evidence of other threats, abuse, beatings, and sexual assaults in the record upon which a reasonable jury could find that Movant committed the crimes charged.  *See* R&R at 19–20 (summarizing evidence

Judge Reid that Movant cannot demonstrate prejudice under *Strickland*—that if his counsel had questioned J.C.M. about this specific alleged conflict, the result of his trial would have been different. *See* R&R at 23.

As to Objection No. 27, in which Movant argues that the Report and Recommendation failed "to address the government's bolstering of J.C.M.'s testimony, albeit false testimony, and vouching for J.C.M.'s honesty, albeit dishonesty," Objs. at 24, it is true that the Report and Recommendation does not appear to discuss whether the government bolstered J.C.M.'s testimony. *See generally* R&R.  It is also true that it is not clear that Movant raised in his Amended Motion that his trial counsel was ineffective ***by failing to object*** to any allegedly improper bolstering of witness testimony at trial.  *See generally* Mot.  Rather, to the extent Movant's Amended Motion discusses the government bolstering J.C.M.'s testimony, the Amended Motion does so expressly within the context of Movant's trial counsel's alleged failure to effectively cross-examine J.C.M. on the conflict alleged above.  Specifically, the Amended Motion states:

> Second, Trial Counsel's failure to expose J.C.M.'s false testimony and impeach her credibility[] allowed the government to capitalize on it and utilize it to bolster J.C.M.'s credibility in their closing argument when AUSA Johanes stated: "the defendant is stopped.  Is [J.C.M.] making that up?  No she's not."  The AUSA continued with: "What do you know that corroborated what [J.C.M.] is saying? . . . He calls his best friend Tony (at 3:27 p.m.), and tells Tony, look, I got this girl tied-up."  Mr. Miers was extremely prejudiced by the bolstering of this false testimony and the government vouching for J.C.M.'s honesty, when she was scientifically proven to be lying.  ***Had Trial Counsel exposed J.C.M.'s false testimony, the government would have been required to correct it, and would have prevented the government from capitalizing on it in closing***, there is more than a reasonable probability Mr. Miers would not have been found guilty of the completely fabricated kidanpping.

Mot. at 12 (emphasis added) (ellipses in original).

_____

presented at trial within the context of Movant's constructive amendment claim in the instant Amended Motion to Vacate); *see also Miers*, 686 F. App'x at 844.

The Court will not permit Movant to amend his Amended Motion by way of his Objections to the Report and Recommendation. But, even if Movant had argued in his Amended Motion that his trial counsel was ineffective because they failed to object the government's bolstering J.C.M.'s allegedly false testimony, such objection would not have been meritorious, and Movant is unable to demonstrate that he was prejudiced under *Strickland*.

"Improper bolstering occurs when the government places its prestige behind the witness, or when the government suggests that information not presented to the jury actually supports the witness's credibility." *United States v. Reeves*, 742 F.3d 487, 502 (11th Cir. 2014) (citing *United States v. Bernal–Benitez*, 594 F.3d 1303, 1313–14 (11th Cir. 2010)). "The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1314 (11th Cir. 2010) (citing *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991)). Movant asserts that the government bolstered J.C.M.'s testimony as follows:

> [I]n their closing argument when AUSA Johannes stated: "The defendant is stopped. Is J.C.M. making that up? No she's not." The AUSA continued with: "What do you know that corroborated what Jessica is saying? . . . He calls his best friend Tony [at 3:27 p.m.], and tells Tony, look, I got this girl tied-up". Mr. Miers was extremely prejudiced by the bolstering of this false testimony and the government vouching for J.C.M.'s honesty, when she was scientifically proven to be lying.

Mot. at 12 (alteration in original). Here, the government did not point to any evidence that was not already presented to the jury. *See* (CR-ECF No. 112) at 47–48. Nor did the government place its prestige behind J.C.M. Thus, Movant cannot demonstrate that the government bolstered J.C.M.'s testimony or that his counsel was ineffective by failing to raise this argument.

Last, to the extent Movant objects to the Report and Recommendation's consideration of the Confrontation Clause of the Sixth Amendment because Movant "has no idea what the

magistrate was addressing," this is not a proper objection and the Court need only satisfy itself that there is no clear error.   On this point, the Court finds no clear error in the Report and Recommendation's references to the Sixth Amendment's Confrontation Clause in light of Movant's claim that his counsel failed to effectively cross-examine a government witness.

Because Movant cannot demonstrate that his trial counsel was ineffective, the Report and Recommendation correctly concluded that Movant's claims for relief predicated on that argument fails.  *See Freeman*, 536 F.3d at 1233.  Accordingly, Movant's Objection Nos. 23 through 27 are overruled.

### G.    Objections 28 Through 29: Failure to Investigate Allegedly Exculpatory DNA Evidence.

In the Report and Recommendation, Magistrate Judge Reid noted the timeline at issue: in November of 2014, the government provided the defense with an October 23, 2014 DNA report; Movant's trial began on December 8, 2014; Movant's trial ended on December 11, 2014.  R&R at 23–24.   The Report and Recommendation notes that Movant claims his trial counsel was ineffective for "doing nothing" with the October 23, 2014 DNA report.  *Id.* at 23.  Specifically, in his Amended Motion, Movant asserts that his trial counsel was "unprepared and unable to defend Mr. Miers with the exculpatory DNA reports which clearly shows that the 'ejaculate' did not match Mr. Miers."  Mot. at 14.  According to Movant,

> Had Trial Counsel presented the fact that J.C.M., who indisputably had showered and changed clothes, immediately prior to the alleged kidnapping, had the unidentified and unmentioned semen from two (2) or more men in her pants, and not that of Mr. Miers, with an F.B.I. Laboratory report and CODIS results to support and prove it; there is more than a reasonable probability the result of the proceeding would have been different, i.e., Mr. Miers would not have been found guilty of kidnapping.

*Id.*

Now, in Objection Nos. 28 and 29, Movant objects to the Report and Recommendation in

its entirety and appears to incorporate by reference objections from his earlier filed objections, (ECF No. 44), insofar as they relate to his claim that his trial counsel were ineffective by failing to pursue exculpatory DNA evidence.  Objs. at 25.  In addition, Movant objects to the Report and Recommendation's conclusion that he provides no evidence regarding his DNA claim, and argues that he requires an evidentiary hearing as to this issue.  *Id.*

Movant is mistaken.

In short, the Court agrees with the Report and Recommendation.  Contrary to Movant's assertion in his Amended Motion, the October 23, 2014 DNA report does not exculpate Movant. The October 23, 2014 DNA report states that semen was found on J.C.M.'s pants; the report does not say that that semen was not Movant's—the report does not indicate that that DNA was tested against Movant's DNA.  *See generally* (ECF No. 42-1).  In fact, per the January 16, 2015 FBI Laboratory Report from ***after Movant was convicted***, conducted upon a "routine search of the FBI CODIS database," Movant's DNA may have matched against one of the items on which semen was found in the October 23, 2014 report—the victim's pants.  *See* (ECF Nos. 42-1, 42-2). Specifically, after Movant was convicted at trial, a CODIS report indicated a "possible association" between Movant's DNA and the semen found on the victim's pants that were tested as part of the October 23, 2014 DNA report, however, as is also noted in the Report and Recommendation, "a confirmation sample from the identified suspect must be acquired to provide a conclusion about [the] possible DNA association."  (ECF No. 42-2).

Thus, if Movant's counsel had pursued the DNA evidence Movant argues they were deficient for not pursuing, it is likely Movant would have been further inculpated.  And, in any event, as discussed at length in the Report and Recommendation and as discussed above herein, there was more than sufficient other evidence adduced at trial to support Movant's conviction in

this case.   An evidentiary hearing is unnecessary.   This Court agrees with the Report and Recommendation that it is best not to second-guess Movant's trial counsel's decision not to conduct further, likely inculpatory, DNA investigation.   This is especially so in light of the strategy defense counsel pursued at trial arguing that any sexual contact between Movant and the victim was consensual.[11]   *See* (CR-ECF No. 111) at 66–73; *see also* (CR-ECF No. 32) (noting that Movant's trial counsel had informed government counsel that Movant's "defense would be that Victim J.C.M. consented to being with [Movant] on the dates at issue and to the sexual acts that occurred during that time" and that "[Movant] would argue that J.C.M. liked to engage in 'rough sex'").   Accordingly, the Court agrees with Magistrate Judge Reid that Movant's trial counsel were not deficient by failing to pursue this DNA evidence further.   *See* R&R at 25; *Freeman*, 536 F.3d at 1233.   Movant's Objection Nos. 28 through 29 are overruled.[12]

---

[11]   At the very beginning of the defense's opening statement, Movant's trial counsel referred to Movant's and the victim's relationship as "a roller-coaster relationship" in which they would "swing continuously between conflict.   They would swing with their words.   They would swing back and forth with their actions and their deeds."  (ECF No. 111) at 66.   Counsel noted that the jury would see photographs, and that "the extremes that [Movant and J.C.M.] had in their passions were something which is probably going to be very sometimes hard for us to understand, maybe even hard to look at."  *Id.*  Defense counsel further stated:

> Was there physical acts?   Yes.   Did things maybe at some point get out of hand?
> Yes.   But there was making up.   And they would swing back and forth, back and
> forth.   Why?   What causes a couple to do this?   Who knows?   But they do.   And
> you're going to see it.

*Id.* at 72.

[12]   Movant does not appear to object to the Report and Recommendation's finding that Ground 4 of the Amended Motion is untimely because it does not relate back.   *See* R&R at 3, 6, 29.   The Court finds no clear error in the finding that Movant's Ground 4, which relate to alleged *Brady* and *Giglio* violations, is untimely and does not relate back to the Amended Motion's claim that Movant's trial counsel were ineffective by failing to pursue DNA evidence further.   *See Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *see also Ochoa v. United States*, No. 07-22659-CIV, 2010 WL 11694499, at *2 (S.D. Fla. Apr. 9, 2010).

###### H.    Objection No. 30: Cumulative Error.

In Objection No. 30, Movant contests the Report and Recommendation's findings on Movant's cumulative error claim as confusing and appears to argue that the evidence against him does not support his conviction because the government did not prove the element of holding essential for the crime of kidnapping, as argued earlier. Objs. at 26. Movant also renews his request for an evidentiary hearing. *Id.* Respondent argues that the Report and Recommendation correctly concludes that Movant's cumulative error claim fails because no error was committed in the first instance in the underlying criminal case. Objs. Resp. at 6.

The Court finds that Objection No. 30 is not a proper objection to the Report and Recommendation. As the Court noted above, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo*, 2018 WL 4258355, at *1. Movant's Objection No. 30 restates prior objections made earlier within his Objections, disagrees with and characterizes the findings in the Report and Recommendation as confusing, and renews his request for an evidentiary hearing. *See* Objs. at 25. Thus, the Court need only satisfy itself that there is no clear error. The Court finds no clear error, and the findings in the Report and Recommendation are not confusing, as Movant asserts. Accordingly, Objection No. 30 is overruled.

In sum, the Court overrules all of Movant's objections to the Report and Recommendation. As to those findings in the Report and Recommendation to which Movant does not object, the Court agrees with those findings. *See* Fed. R. Civ. P. 72(b).

### IV.    MOTION FOR RECONSIDERATION

Movant also requests that this Court reconsider its February 4, 2022 Paperless Order denying his *Motion for Leave (If Required) to File the Attached Amended Objections to the*

*Magistrate's Report Pursuant to Fed. R. Civ. P. 15(a)(1)(B)*, (ECF No. 87).  ("Recon. Mot.") (ECF No. 89).  Therein, the Court declined to permit Movant to file amended objections "as a matter of course."  *Id.*  The Court's Paperless Order noted the Court had already stricken Movant's amended objections from the docket on two occasions.  *Id.*  Further, the Court observed that objections to a report and recommendation of a United States Magistrate Judge are "NOT enumerated as pleadings within Rule 7(a)" of the Federal Rules of Civil Procedure, thus Rule 15(a), cited to by Movant, did not provide him with the relief he sought.  *Id.*

"Reconsideration is an extraordinary remedy to be employed sparingly."  *Holland v. Florida*, No. 06-20182-CIV-SEITZ, 2007 WL 9705926, at \*1 (S.D. Fla. June 26, 2007) (citation and internal quotation marks omitted).  "The only grounds for granting a motion for reconsideration 'are newly-discovered evidence or manifest errors of law or fact.'"  *United States v. Dean*, No. 20-11603, 2020 WL 7655426, at \*2 (11th Cir. Dec. 23, 2020) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam)).  A motion for reconsideration should raise new issues, not merely address issues litigated previously.  *Socialist Workers Party v. Leahy*, 957 F. Supp. 1262, 1263 (S.D. Fla. 1997).  "A party's disagreement with the court's decision, absent a showing of manifest error, is not sufficient to demonstrate entitlement to relief."  *Dean*, 2020 WL 7655426, at \*2 (citing *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010)).

Here, Movant argues that, until this Court's February 4, 2022 Paperless Order stating that objections are not pleadings, Movant lacked such clarity, and it took three motions over the course of three months to arrive at that conclusion.  Recon. Mot. at 2.  Movant claims that the fact that objections are not pleadings is not a substantial reason to deny the leave to amend.  *Id.* at 3.  Movant asserts that "there are hundreds, if not thousands of 'Amended Objections to the Report and

32

Recommendations of the Magistrate Judge' contained in the Case Law of the District Courts of this Country, this Circuit, and specifically [this District]." *Id.* Movant argues this Court did not set forth why there was no substantial reason to deny him leave to amend, and that amended objections are permitted. *See generally id.* According to Movant, this Court's denial of his motion to amend his objections as a matter of course under Rule 15(a) was based on a technicality—citation to the wrong statute or rule. *Id.* Movant claims that each of his attempts to amend his objections was timely and procedurally correct.

The Court finds that Movant has not satisfied the heavy burden required for reconsideration. To begin, Movant's motion for reconsideration cites to cases discussing the standard applicable when deciding whether to permit a plaintiff leave to amend a ***pleading***. Recon. Mot. at 4 (citing *Foman v. Davis*, 371 U.S. 178 (1962); *Pioneer Metals, Inc. v. Univar USA, Inc.*, 168 F. App'x 335 (11th Cir. 2006); *United States ex rel. Feingold v. Palmetto Gov't Benefits Admins.*, 477 F. Supp. 2d 1187 (S.D. Fla. 2007)). Movant has not pointed the Court to any new evidence that would support his motion for reconsideration. Nor has Movant pointed the Court to any manifest error of law. To the extent that Movant claims that reconsideration is required to prevent manifest injustice, this Court disagrees. This Court previously provided Movant with an additional forty-five (45) days to submit his initial objections to the Report and Recommendation. (ECF No. 73). The Court also permitted Movant to exceed the page limitation for his Objections. (ECF No. 77). Movant has already been warned that this Court will not entertain piecemeal litigation. *See, e.g.*, (ECF Nos. 52, 56). The Court will not permit continual amendments from delaying the adjudication of this case.

For these reasons, Movant's Motion for Reconsideration will be denied.

## V.      CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").  A movant has no absolute entitlement to appeal a district court's final order denying his motion to vacate.  Rather, to pursue an appeal, a movant must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Magistrate Judge Reid found that "Movant has not made a substantial showing of the denial of a constitutional right.'" R&R at 34.  The Court agrees with Magistrate Judge Reid's finding; a COA shall not issue.

## VI.     CONCLUSION

Movant has failed to set forth an entitlement to *habeas* relief.[13]  Accordingly, UPON CONSIDERATION of the Amended Motion to Vacate pursuant to § 2255, Respondent's Response, the Report and Recommendation, Movant's Objections, Respondent's Response to Movant's Objections, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Movant's Objections (ECF No. 79) are OVERRULED, Magistrate Judge Reid's Report and Recommendation (ECF No. 71) is ADOPTED, Movant's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 11) is DENIED, and no certificate of

---

[13]  No evidentiary hearing is warranted because "the files and records of the case conclusively show that the [Movant] is entitled to no relief." 28 U.S.C. § 2255(b); *see also Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (finding that a hearing is not warranted in a § 2255 case where claims are "patently frivolous," "based upon unsupported generalizations," and/or "affirmatively contradicted by the record") (citation and internal quotation marks omitted).

appealability shall issue.  It is further ORDERED AND ADJUDGED that Movant's Motion for Reconsideration of Order Denying Petitioner's Motion for Leave to Amend Objections to the Magistrate's Report (ECF No. 89) is DENIED.  The Clerk of Court is INSTRUCTED to CLOSE this case.  All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>19th </u> day of March, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:      All counsel of record

Timothy John Miers
11031-050
Tucson-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 24550
Tucson, AZ 85734
PRO SE